Sandy **BIDNER**, M.D., Appellant,

v.

Sherri **HILL**, Appellee.

No. 05–06–01335–CV.

Court of Appeals of Texas, Dallas.

July 26, 2007.

Michael A. Yanof, Stinnett, Thiebaud & Remington, L.L.P., Dallas, for Appellant.

Stephen D. McKimmey and W. Coleman Sylvan, Sylvan McKimmey, L.L.P., Dallas, for Appellee.

Before Justices O'NEILL, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion by Justice FITZGERALD.

In this interlocutory appeal, Sandy Bidner, M.D. challenges the trial court's denial of his motion to dismiss Sherri Hill's medical malpractice claims against him. In a single issue, Bidner argues that Hill failed to comply with the expert-report requirements of the Medical Liability and Insurance Improvement Act. For the reasons stated below, we affirm the judgment of the trial court.

At the outset, we asked the parties to address the issue of this Court's jurisdiction over this interlocutory appeal. We conclude we have jurisdiction to review the order denying Bidner's motion to dismiss. *See Cayton v. Moore,* 224 S.W.3d 440, 444 (Tex.App.-Dallas 2007, no pet.) (concluding Court has jurisdiction when trial court's order, in part, denies request for dismissal); *see also Simonson v. Keppard,* 225 S.W.3d 868, 2007 WL 1586128 *1 (Tex. App.-Dallas 2007, no pet. h.); *Harris v. Jones,* 2007 WL 1866879 *1 (Tex.App.-Dallas 2007, no pet. h.).

In May 2004, Hill suffered a fall and severely fractured her left wrist. She was treated initially at an emergency room, where x-rays were taken. She was instructed to follow up with an orthopedist. Hill was subsequently treated in Bidner's office from May through September of 2004. Hill eventually filed suit against Bidner, alleging she suffered pain, loss of function, and deformity in her left hand and arm as a result of Bidner's failure to counsel her concerning the need to reduce her wrist fracture.

Hill timely served the report of Dr. Phil Berry pursuant to the requirements of chapter 74 of the Act. Berry's report was based on his review of Hill's medical records and his own examination of Hill. In his report, Berry describes Hill's treatment at the emergency room and her treatment each time she was seen at Bidner's office. He reports the facts concerning Hill's impairment as he observed them during his examination. He then evaluates Hill's treatment by Bidner and Bidner's staff, setting forth in four points what Berry calls "the explanation for this patient's permanent deformity, her loss of function, and her chronic pain when using her arm."

- First, Berry points to the fact that "[n]otes written or dictated by the physician are conspicuously absent from the record." Berry goes on to opine that stamps or electronic signatures confirming treatment, or purporting to approve treatment by a non-physician, do not comply with the

physician's standard of care because such a signature "in no way ensures that the physician actually created the record, or had input into the text of the report."

- Next, Berry declares that the relevant standard of care would have required, at Hill's first appointment in Bidner's office, "a frank discussion with the patient concerning her deformity of the fracture and where this might lead if left to heal in the deformed position." This discussion never occurred, and the patient was never presented with options of a closed or open reduction "to improve her deformity and possibly making her long term function much better." Thus, "[u]nfortunately, as time progressed with no effort to improve the alignment, the deformity became more permanent in nature."

- Berry gives the specific measurements of the angulation of Hill's deformed distal radius: on her emergency room x-ray, it was 19 degrees ("unacceptable by most orthopedists who treat this injury"); combined with the posterior angulation of 19 degrees, it was 28–32 degrees when diagnosed ("unacceptable by any standard"). Berry states that Bidner's acceptance of this degree of deformity without making efforts to improve the angulation was a violation of the standard of care.

- Finally, Berry states:

  The fracture continued to angulate as it healed, reaching a final angular posterior deformity of 34 degrees, or 43–47 total degrees, incompatible with reasonable function, and causing chronic pain.

Berry's report concludes by stating that, in his opinion, "the overall treatment was incompatible with the standard of care in the North Texas region." He concedes candidly that after this type of serious injury the outcome may be poor, but "it is uncommon not to attempt to make a clearly obvious deformity better by performing another reduction." Bidner made no attempt to improve the deformity, leaving Hill with "a chronically painful wrist, significant loss of function, and a deformed wrist, all of which could have been avoided with diligent care."

Bidner filed a motion to dismiss Hill's suit, arguing Berry's report was insufficient because it failed to establish each of the statutory elements of such a report: the applicable standard of care, a breach of that standard of care, and a causal link between Bidner's alleged breach and Hill's injuries. The trial court concluded the Berry report was sufficient to meet the Act's threshold requirements, and it denied Bidner's motion to dismiss. Bidner brings this interlocutory appeal.

The trial court must determine whether the proffered report represents a good-faith effort to comply with the statutory definition of an expert report. *Am. Transitional Care Centers of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). An adequate report presents "a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury." *Id.* We review the trial court's conclusions about the challenged report for an abuse of discretion. *Id.*

On appeal, Bidner has narrowed his complaints to the *causation* issue, arguing only that the report fails to set forth adequately a specific causal link between the alleged breaches of the standard of care and the injuries alleged by Hill. A report may be held inadequate as to causation only if it does not constitute a good-

faith effort to provide a fair summary of the expert's causation opinions. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). To constitute a good-faith effort to establish the causal-relationship element, the expert report must fulfill *Palacios's* two-part test: it must inform the defendant of the specific conduct the plaintiff has called into question, and it must provide a basis for the trial court to conclude that the claims have merit. 46 S.W.3d at 879. A conclusory report cannot meet the statutory requirements because it does not satisfy this two-part test. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex.2002). An adequate report will link the expert's conclusion with the alleged breach of the standard of care. *Compare id.* (report inadequate because lacks information linking ultimate conclusion to alleged breach) *with Tovar v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P.*, 185 S.W.3d 65, 70 (Tex.App.-San Antonio 2005, pet. denied) (report adequate because links conclusion regarding alleged breach with ultimate conclusion).

Bidner relies on the Supreme Court's opinion in *Wright* and on our sister court's opinions in *Lo v. Higgs*, 2006 WL 800823 (Tex.App.-Beaumont 2006, no pet.) (not designated for publication), *Longino v. Crosswhite*, 183 S.W.3d 913 (Tex.App.-Texarkana 2006, no pet.), and *Lopez v. Montemayor*, 131 S.W.3d 54 (Tex.App.-San Antonio 2003, pet. denied). In each of these cases, the appellate court found the proffered expert report deficient on the element of causation because the report failed to explain how the conduct of the provider caused the plaintiff's injury; in each case, the reviewing court concluded the proffered report was conclusory on the causation element. *See Wright*, 79 S.W.3d at 53 ("conclusory" report does not link expert's conclusion on outcome to alleged breach); *Lo*, 2006 WL 800823 *3 ("conclusory" report does not explain how provider's al-

leged error caused harm); *Longino*, 183 S.W.3d at 917–18 (report contains "mere conclusions" and does not link expert's conclusions to facts); *Lopez*, 131 S.W.3d at 60 ("conclusory" report does not provide information linking provider's actions to death of plaintiff's decedent).

We believe the Berry report goes further than the reports challenged in those cases. Fundamentally, Hill charges Bidner should have performed a reduction of her fractured wrist. Thus, Hill's claim and her proffered expert report are rooted in Bidner's alleged failure to act. To avoid being adjudged conclusory, the report must explain how Bidner's alleged failure to act caused Hill's injuries. It must point to facts linking the failure to perform a reduction with Hill's severe deformity, chronic pain, and physical limitations. Berry's report meets these requirements. He states Bidner was removed from the treatment of his patient and that he never suggested or recommended the standard treatments for attempting to improve an obvious deformity. Berry explains what happened to Hill's wrist as time passed with no attempt to realign her fractured bone: the angle at which the bone healed became more and more distorted, and the resulting severe deformity caused chronic pain and limited Hill's ability to use her hand and arm. Berry's report is not conclusory. *See, e.g., Farishta v. Tenet Healthsys. Hosps. Dallas, Inc.*, 224 S.W.3d 448, 454 (Tex.App.-Fort Worth 2007, no pet. h.) (adequate report explains failure to require and perform standard tests allowed infection that caused injuries); *Tovar*, 185 S.W.3d at 70 (adequate report explains nurses' failure to inform physicians of patient's status prevented treatment that would have averted patient's death); *Moore v. Sutherland*, 107 S.W.3d 786, 791 (Tex.App.-Texarkana 2003, pet. denied) (adequate report explains failure

to diagnose and treat bile peritonitis before discharge prevented treatment that would have prevented patient's death). Moreover, Berry's report appropriately informs Bidner of the specific conduct Hill has called into question, and it provides a sufficient basis for the trial court to conclude that Hill's claims have merit. *See Palacios,* 46 S.W.3d at 879.

We find no abuse of discretion in the trial court's denial of Bidner's motion to dismiss. We affirm the trial court's order.