Carol **WOOTEN**, Appellant,

v.

Eberhard **SAMLOWSKI**, **M.D.,** Appellee.

No. 10–07–00305–CV.

Court of Appeals of Texas, Waco.

May 21, 2008.

Opinion Dissenting to Denial of Rehearing July 9, 2008.

---

**2.** *See* State's Appellate Brief at 9.

---

Barney L. McCoy, Houston, TX, for appellant.

Kay E. Ellington, Law Office of Kay Ellington, Dallas, TX, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

This is a medical-negligence case pertaining to the expert report requirements of section 74.351 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp.2007). Appellant Carol Wooten sued Appellee Eberhard Samlowski, M.D., for medical negligence. Within 120 days of filing suit, Wooten served the statutorily required expert report on Dr. Samlowski. *See id.* § 74.351(a). Dr. Samlowski filed an objection and then a motion to dismiss, each contending that Wooten's expert report was deficient regarding how Dr. Samlowski's alleged standard-of-care breaches (negligent acts and omissions) proximately caused injury to Wooten. The trial court granted Dr. Samlowski's motion to dismiss, but it did not expressly rule on Wooten's alternative request for a thirty-day extension to cure any deficiencies in the report. *See id.* § 74.351(c). However, the order granting the motion to dismiss denied all relief not granted. We will reverse and remand.

## Adequacy of Report

### *Applicable Law*

In her first issue, Wooten asserts that the trial court erred in dismissing her suit because her report represented a good-faith effort to comply with the statutory requirement for an expert report.

When considering a motion to dismiss under section 74.351, the issue is whether the filed report represents a good-faith effort to comply with the statutory definition of an expert report. *See Bowie Mem. Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). An "expert report" is "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6).

In determining whether the report represents a good-faith effort, the inquiry is limited to the four corners of the report. *Palacios,* 46 S.W.3d at 878. We review the trial court's decision to dismiss by the abuse-of-discretion standard. *Id.* at 877. "However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*" *Austin Heart, P.A. v. Webb,* 228 S.W.3d 276, 279–80 (Tex. App.-Austin 2007, no pet.); *see also In re American Homestar of Lancaster, Inc.,* 50 S.W.3d 480, 483 (Tex.2001) ("A trial court has no discretion to determine what the law is or in applying the law to the facts and, consequently, the trial court's failure to analyze or apply the law correctly is an

abuse of discretion.").[1]

■■■ The report need only represent a good-faith effort to provide a *fair* summary of the expert's opinions. *Palacios,* 46 S.W.3d at 878. The report does not have to marshal all of the plaintiff's proof and the plaintiff need not present evidence in the report as if it were actually litigating the merits. *Id.* at 879. Rather, to constitute a good-faith effort, the report must address the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff calls into question and to provide a basis for the trial court to conclude that the claims have merit. *Id.* at 875.

### Discussion

Wooten's expert, R. Don Patman, M.D., a Texas-licensed physician, is a 1958 graduate of the University of Texas Southwestern Medical School, where he ranked second in his class. He was board-certified in general surgery in 1966 by the American Board of Surgery and was board-certified in vascular surgery in 1983 by the American Board of Surgery. He presently is Clinical Assistant Professor of Surgery at the University of Texas Southwestern Medical School and Attending Surgeon at Baylor University Medical Center in Dallas.

After setting forth the factual basis for his knowledge of the applicable standards of care, Dr. Patman's single-spaced, nine-page report states:

The following represents the pivotal medical facts in this case expressed in an abbreviated yet still lengthy chronological history of the care and circumstances reflected in the records that I have reviewed. Also included is a summary of my opinions regarding the applicable standard of care, the manner in which the care deviated from these standards and the causal relationship between that failure and the harm and injuries incurred by Carol Wooten.

The report then sets forth Wooten's chronological medical history from the records that Dr. Patman had reviewed. We summarize the pertinent parts:

· On November 17, 2004, Wooten, a 31–year–old female, presented to the Walls Regional Hospital complaining of abdominal pain described as "crampy" with increasing severity with nausea, belching, abdominal bloating, and loose stools. Dr. Samlowski, a surgeon, was consulted and assumed Wooten's primary care. He documented that her pain was located in the right upper quadrant with radiation into the back.

· Wooten's history revealed a prior abdominal hysterectomy and two exploratory abdominal procedures for "abdominal tumors." She also had a history of sarcoidosis and diabetes mellitus, and she was overweight and a smoker and complained of occasional wheezing and productive cough.

1. The trial court's review and our review of the expert report are the same; the trial court is in no better position than we are in reviewing the report; and whether the report represents a good-faith effort to comply with the statutory definition of an expert report is fundamentally a question of law. An expert report either complies with the statutory requirements (and the case law construing those requirements), or it fails to comply. No "discretion" is apparent in the analysis. We thus question the propriety of an abuse-of-discretion standard of review if that standard is something other than the trial court's applying the law to determine whether the report represents a good-faith effort to provide a fair summary of the expert's opinions. *See Grindstaff v. Michie,* 242 S.W.3d 536, 539 n. 2 (Tex.App.-El Paso 2007, no pet.) (discussing appealing physician's suggestion that de novo standard should apply).

Her physical exam did not include vital signs. Pelvic and rectal exams were not performed, and the presence or character of bowel sounds were not described. Wooten's admitting lab studies showed a normal WBC (white blood cell) count, but her glucose was abnormal, her sodium was low, and her alkaline phosphatase was elevated. Dr. Samlowski's impression from the history, physical exam, and lab work was "biliary colic, cholecystitis" (gallstones). His plan was to await results from an ultrasound, but he thought Wooten most likely would need a "lap-chole" (laparascopic cholecystectomy, or gallbladder removal).

· The abdominal sonogram revealed no conclusive evidence of gallbladder stones or other hepatobiliary disease, and a hepatobiliary scan failed to confirm acute cholecystitis on November 18. Plain film of the abdomen was interpreted as displaying a nonspecific bowel gas pattern, but no admission chest film was performed. Wooten was scheduled for a laparascopic cholecystectomy on November 19, with his final conclusion being "possible left nephrolithiasis" (kidney stones). In Dr. Samlowski's operative note, dictated on November 28 (ten days after the first surgery and also after her second surgery on November 23), the preoperative diagnoses were chronic cholecystitis, "severe right upper quadrant pain, out of proportion to findings," and "previous operations for sarcoidosis and bowel obstruction" (the first mention of prior bowel obstruction as the etiology of her two prior exploratory laparotomies). Dr. Samlowski's postoperative diagnoses included evidence of chronic cholecystitis, dense adhesions to the gall bladder, and "sludge" within the gallbladder. Intraoperative findings included "dense adhesions in the right upper quadrant and in the pelvis from previous surgeries," "dense adhesions to the gallbladder," "lower abdominal adhesions," which Dr. Samlowski did not try to "take down," and "sludge within the gallbladder."

· Dr. Samlowski's operative note states in part: "I looked down into the lower abdomen and she just had adhesions from stem to stern and I did not want to take more of these down for fear of altering the anatomy too much and possibly creating a potential bowel obstruction." A day later, Wooten was described as being diaphoretic (sweating) with poor respiratory effort, lungs displaying "crackles," and hyponatremia (low sodium). Dr. Samlowski noted, "There still could be a bowel component to her abdominal problems." On the second postoperative day, Wooten was not improving, and on the third postoperative day, her blood pressure remained low, BUN (blood urea nitrogen) was elevated, creatinine was elevated, hyponatremia persisted, and glucose was elevated. Her first chest x-ray since admission revealed a large right pleural effusion. A CT scan of the abdomen revealed "right lower lobe atelectasis [collapsed lung] and pleural effusion, a large amount of abdominal ascites with free intraperitoneal air."

· On the fourth postoperative day (November 23), Wooten was intubated and placed on mechanical ventilation and transferred to ICU. An internal medicine consult that day included an impression of "probable acute postoperative abdomen, with suspected right upper quadrant problem" and recommended surgery to explore the abdo-

men. Dr. Samlowski took Wooten back to surgery that day; his postoperative diagnosis included "complete bowel obstruction in pelvis, with several areas of necrosis and perforation of the pelvis below the area of the laparoscopic cholecystectomy dissection." The surgery involved exploratory laparotomy, extensive adhesiolysis, extended right hemicolectomy, enterorrhaphy, segmental resection of the small bowel with anastomosis, and placement of a right subclavian central line. Dr. Samlowski's operative report stated in part: "As I took down the adhesions, especially as I got further into the pelvis, it was obvious that this patient was obstructed and she had loops of bowel stuck in her pelvis and as I got further down in her pelvis there were areas of necrosis and perforation. . . . There were several loops of small bowel that were just plastered literally into the pelvis."

· Wooten was transferred to Huguley Memorial Medical Center in Fort Worth, primarily for respiratory failure and also for multiple complications. At Huguley, Wooten required intensive medical management by numerous consultants and four more operative procedures: tracheostomy, reexploration of abdomen due to anastomotic breakdown and breakdown of enterotomy repairs that required resection and ileostomy creation, insertion of hemodialysis catheter, and transesophageal echocardiogram. She was discharged from Huguley on January 21, 2005, about sixty days after her admission to Walls. She was hospitalized again for about ten days in February for significant hyponatremia.

Upon completing Wooten's medical chronology, Dr. Patman's report states:

In summary, Ms. Wooten was operated on by Dr. Samlowski on 11/17/04 for an inaccurate diagnosis following an incomplete preoperative evaluation, *with subsequent multiple avoidable and life-threatening complications* which resulted in lengthy hospital admission on three occasions between 11/17/04 and 02/05/05. [Emphasis added.]

In addition to setting out the applicable standard of care relating to management of a patient with a potential major surgical problem, Dr. Patman's report discusses those standards in detail in the context of Wooten's case. The report also notes that the preoperative studies that were performed failed to confirm Dr. Samlowski's only diagnosis of biliary colic secondary to acute cholecystitis and that with abdominal disorders, a rectal examination should always be done and a pelvic examination should be performed unless contraindicated. Dr. Patman opines that "when the criteria for diagnosis invoked have not been met to then establish a differential diagnosis of other illnesses that may be responsible for the present illness and proceed with diagnostic studies to rule in or out such conditions or obtain consultation." For example, Dr. Patman states that the standard of care called for Dr. Samlowski to

proceed with further indicated diagnostic studies such as a CT scan of the abdomen and pelvis and/or Gastrografin upper GI series with small bowel follow-through and/or obtain appropriate consultations. *More likely than not,* the CT scan or Gastrografin study would have been abnormal suggesting hollow viscus inflammatory disease with possible abscess formation or complete or partial bowel obstruction. Obstruction is the most common surgical disorder of the small intestine. Adhesions acquired

from prior abdominal operations or inflammation cause over 60% of small bowel obstruction in adults. [Emphasis added.]

The report includes the following concise presentation of Dr. Samlowski's alleged standard-of-care breaches:

1. Failure to perform a comprehensive *diagnostic work-up* and thereby failed to determine the correct course and extent of the present illness as described in detail previously.

2. Failure to perform a comprehensive *preoperative* evaluation which would provide an accurate overall assessment of Ms. Wooten's general health which would identify significant abnormalities and comorbidities that increased the operative risk and adversely influence recovery.

3. Failure to obtain a comprehensive history and physical exam.

4. Failure to establish a differential diagnosis of other illnesses that could be responsible for the symptoms complained of by Ms. Wooten and proceed with indicated diagnostic studies as previously described for the purpose of ruling in or out other suspected diagnoses.

5. Failure to evaluate the systemic disorder sarcoidosis and its possible contributory influence or etiology of Ms. Wooten's present illness (intestinal obstruction due to sarcoidosis as revealed in the records dated 11/28/04 and as explained in the text of this letter).

6. Failure to evaluate the presence of sarcoidosis in the *preoperative preparation* phase of Ms. Wooten by the omission of a preoperative chest film, preoperative arterial blood gases, pulmonary function test, and pulmonary inhalation therapy.

7. Failure to delay the elective laparoscopic cholecystectomy procedure until the comprehensive *preoperative evaluation* could be performed so that the significant comorbidities that *were* identified could be assessed, treated and thereby decrease the operative risks and decrease those factors that are known to adversely influence recovery.

8. Failure to evaluate the comorbidity of diabetes mellitus and monitor blood sugars during the preoperative evaluation for reasons described previously.

9. Failure to document the presence or absence of prolonged cortisone therapy that so frequently in patients with systemic sarcoidosis thereby identifying those patients susceptible to adrenal crisis.

The report concludes:

Therefore, after a careful review of the medical records available, it is my opinion, based upon reasonable medical probability, that the breaches in the applicable standard of care by the multiple acts of omission as described in detail above during the care and management of Carol Wooten by Eberhard Samlowski, M.D., constituted negligence and such negligence *were proximate causes of Ms. Wooten's developing multiple life-threatening complications that required resultant multiple but avoidable operations, multiple organ failure with permanent damage, and the multiple hospital admissions of prolonged duration.* Furthermore, it is my opinion, based upon reasonable medical probability, Ms. Wooten *will require continued treatment* for the injuries sustained during the period from 11/17/04 through 11/26/04, and *will require subsequent op-*

*erations in the future.* [Emphases added.]

The precise issue before us is whether Dr. Patman's report was a good-faith effort to provide a fair summary of his opinions on *the causal relationship* between Dr. Samlowski's specified failures and the injury, harm, or damages claimed. It is the substance of the opinions, not the technical words used, that constitutes compliance with the statute. *Ehrlich v. Miles,* 144 S.W.3d 620, 626–27 (Tex.App.-Fort Worth 2004, pet. denied); *Moore v. Sutherland,* 107 S.W.3d 786, 790 (Tex.App.-Texarkana 2003, pet. denied). A report's adequacy does not depend on its use of "magical words." *Bowie Memorial,* 79 S.W.3d at 53. However, the report cannot merely state the expert's conclusions about the statutory elements; the expert must explain the basis of his statements made regarding causation and to link his conclusions to the facts. *Id.* at 52; *Longino v. Crosswhite,* 183 S.W.3d 913, 917–18 (Tex. App.-Texarkana 2006, no pet.). In other words, the report must explain *how* the alleged breach caused the harm or injury. *See Bidner v. Hill,* 231 S.W.3d 471, 474 (Tex.App.-Dallas 2007, pet. denied) (citing *Lo v. Higgs,* 2006 WL 800823, at *3 (Tex. App.-Beaumont 2006, no pet.) (mem.op.) ("report does not explain how the placement of the screws caused harm")). We are precluded "from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Webb,* 228 S.W.3d at 279.

In summary, Dr. Patman opines that the diagnostic criteria for acute cholecystitis were not met (the sonogram failed to evidence gallstones, the hepatobiliary scan did not confirm or reveal duct obstruction, and Wooten's lab results and physical complaints were inconsistent with acute cholecystitis). Dr. Samlowski breached the standard of care by proceeding with a laparascopic cholecystectomy for inaccurately diagnosed acute cholecystitis, instead of establishing a differential diagnosis—taking into consideration her history of sarcoidosis and three prior abdominal surgeries—and proceeding with indicated diagnostic studies such as an abdominal and pelvic CT scan and Gastrografin upper GI series with small bowel follow-through. Dr. Patman states that *"[m]ore likely than not,* the CT scan or Gastrografin study would have been abnormal suggesting hollow viscus inflammatory disease with possible abscess formation or complete or partial bowel obstruction." [Emphasis added.] In other words, if Dr. Samlowksi had not breached the standard of care, more likely than not the actual cause of Wooten's acute abdomen—complete bowel obstruction in the pelvis with several areas of necrosis and perforation—would have been found.

Regarding causation, we focus on two excerpts from Dr. Patman's report:

> In summary, Ms. Wooten was operated on by Dr. Samlowski on 11/17/04 for an inaccurate diagnosis following an incomplete preoperative evaluation, *with subsequent multiple avoidable and life-threatening complications which resulted in lengthy hospital admission* on three occasions between 11/17/04 and 02/05/05. [Emphasis added.]

This sentence essentially states that Dr. Samlowski's inaccurate diagnosis and incomplete preoperative evaluation of Wooten resulted in her subsequent multiple avoidable and life-threatening complications and associated lengthy hospital stays.

The second excerpt reads:

> Therefore, after a careful review of the medical records available, it is my opinion, based upon reasonable medical probability, that the breaches in the applicable standard of care by the multiple

acts of omission as described in detail above during the care and management of Carol Wooten by Eberhard Samlowski, M.D., constituted negligence and such negligence *were proximate causes of Ms. Wooten's developing multiple life-threatening complications that required resultant multiple but avoidable operations, multiple organ failure with permanent damage, and the multiple hospital admissions of prolonged duration.* Furthermore, it is my opinion, based upon reasonable medical probability, Ms. Wooten *will require continued treatment* for the injuries sustained during the period from 11/17/04 through 11/26/04, and *will require subsequent operations in the future.* [Emphases added.]

This paragraph essentially states that Dr. Samlowski's breaches were proximate causes of Ms. Wooten's developing multiple life-threatening complications and that those complications resulted in multiple operations, multiple organ failure with permanent damage, and multiple prolonged hospital admissions, all of which were avoidable. He further states that Wooten will require treatment in the future, including operations.

These sections of Dr. Patman's otherwise well-detailed and specific report ultimately do not explain *how* Dr. Samlowki's alleged breaches caused Wooten's injury, harm, and damages (the multiple life-threatening complications, resultant multiple operations, multiple organ failure with permanent damage, multiple prolonged hospital admissions, and future medical care). From the overall gist of the report, we could infer—and it is almost obvious—that Dr. Patman is of the opinion that, had Dr. Samlowski not breached the standard of care, he more likely than not would have found the source of Wooten's acute abdomen in the beginning, and she in all reasonable medical probability would not have

suffered such injury, harm, and damages. But we cannot make such an inference, nor can we fill in gaps by stating the obvious. Dr. Patman's report on the causal relationship lacks the causal link between his conclusions and the facts. In this case, that lack is a gap—a small gap—but a gap nonetheless.

Accordingly, the trial court did not err or abuse its discretion in determining that the report does not represent a good-faith effort to summarize the causal relationship between Dr. Samlowski's failures to meet the applicable standards of care and Wooten's claimed injury, harm, and damages. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). We overrule Wooten's first issue.

### Extension to Cure Deficiency

■■■ Wooten's second issue complains that the trial court abused its discretion in failing to grant her alternative motion for a thirty-day extension to cure any deficiency in Dr. Patman's report. Subsection 74.351(c) provides: "If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c). Because the trial court in its dismissal order denied all other requested relief, we must conclude that it denied Wooten's alternative motion for an extension.

As we have discussed, Dr. Patman's report is thorough, well-detailed, and—except for one small and easily curable deficiency—patently and sufficiently specific to inform Dr. Samlowksi of the conduct that Wooten calls into question and to provide a basis for the trial court to conclude that Wooten's claims have merit. While the report is technically deficient

because of the inadequate causal link, the report can only be described as a good-faith *attempt* to comply with subsection 74.351(r)(6). It appears that a supplemental report by Dr. Patman could easily cure the deficiency. *See Austin Heart,* 228 S.W.3d at 285 ("He will simply have to add the link between his already stated conclusions and the already referenced conduct of [the physician defendant].").

In the context of this case and Dr. Patman's report, we cannot conceive any valid basis for the trial court to have refused to grant Wooten's request for an extension, which was not dilatory—it was made within her written response to Dr. Samlowski's motion to dismiss.[2] *Cf. Bosch v. Wilbarger Gen. Hosp.,* 223 S.W.3d 460, 465–66 (Tex. App.-Amarillo 2006, pet. denied) (considering fact that plaintiff's request for extension of time was not filed until nine months after expert report was filed in weighing whether trial court abused its discretion); *Hardy v. Marsh,* 170 S.W.3d 865, 870–71 (Tex.App.-Texarkana 2005, no pet.) ("We agree that a trial court should not arbitrarily or unreasonably withhold an extension.") (in case where report was inadequate on standard of care, breach, and causation, finding no abuse where record showed that plaintiffs gave presuit notice one-year before filing suit, and plaintiffs had sufficient time to obtain adequate report).

We conclude that the failure to grant Wooten an extension was arbitrary and unreasonable and that the trial court thus abused its discretion. Accordingly, we sustain Wooten's second issue and remand this cause to the trial court with the instruction to grant one thirty-day extension to Wooten in order for her to attempt to cure the causation deficiency in Dr. Patman's report.

### Conclusion

We reverse the order dismissing Wooten's suit and remand the cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

This is another in a series of proceedings in which the majority refuses to apply the medical malpractice statute. *See Lewis v. Funderburk,* 191 S.W.3d 756 (Tex. App.-Waco 2006), *rev'd & remanded, Lewis v. Funderburk,* 253 S.W.3d 204 (Tex., 2008); *Hill Reg'l Hosp. v. Runnels,* 253 S.W.3d 300 (Tex.App.-Waco, 2007), *rev'd & remanded, Hill Reg'l Hosp. v. Runnels,* 253 S.W.3d 213 (Tex., 2008); *Langley v. Jernigan,* No. 10–00–00373–CV, 2005 WL 486759, 2005 Tex.App. LEXIS 1687 (Tex. App.-Waco Mar. 2, 2005), *rev'd & dism'd, Jernigan v. Langley,* 195 S.W.3d 91 (Tex. 2006); *Hillcrest Baptist Med. Ctr. v. Wade,* 172 S.W.3d 55, 61 (Tex. App.-Waco 2005, pet. granted, appeal dismissed); *Langley v. Jernigan,* 76 S.W.3d 752 (Tex. App.-Waco 2002), *rev'd & remanded, Jernigan v. Langley,* 111 S.W.3d 153 (Tex. 2003). I would apply the statute and affirm the trial court's judgment. I respectfully dissent.

Within 120 days of filing a medical malpractice suit, Carol Wooten served an expert report on Dr. Eberhard Samlowski. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007). After filing an objection contending that the report did not provide any expert opinions regarding how the care rendered by Sam-

---

**2.** Wooten's request for an extension was made three months after serving the report, fourteen weeks after the filing of Dr. Samlow-

ski's objection, and six weeks after the filing of Dr. Samlowki's motion to dismiss.

lowski proximately caused Wooten's injury, harm, or damages, Samlowski filed a motion to dismiss making the same argument. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a), (b) (Vernon Supp.2007). Wooten responded to the motion to dismiss and within the same document, requested a 30 day extension to cure any deficiencies in the report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c) (Vernon Supp.2007).

The trial court dismissed Wooten's suit with prejudice and found that the report did not "represent an objective good faith effort to comply with the definition of an expert report as required by law. . . ." The trial court also ordered that all relief not granted in the order is denied. Because the trial court did not err in finding that the report did not represent an objective good faith effort to comply with the definition of an expert report and because the trial court did not abuse its discretion in denying Wooten's request for a 30 day extension, we should affirm the trial court's judgment.

### DISMISSAL

In her first issue, Wooten argues that the trial court erred in dismissing her lawsuit, taking issue only with the court's determination that the report did not represent an objective good faith effort to comply with the definition of an expert report.

When considering a motion to dismiss under Section 74.351, the issue for the trial court is whether the report represents a good-faith effort to comply with the statutory definition of an expert report. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). An "expert report" means:

A written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6) (Vernon Supp.2007). To constitute a "good-faith effort," the report must discuss the standard of care, breach, and causation with sufficient specificity to fulfill two purposes: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude that the claims have merit. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 879.

The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 878. The report must include the expert's opinion on each of the three elements that the statute identifies: standard of care, breach, and causal relationship. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 878. A report cannot merely state the expert's conclusions about these elements. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 879. "Rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999).

We review a trial court's order dismissing a claim for failure to comply with the expert report requirements under an abuse-of-discretion standard. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 878. When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for the trial court's judgment. *See Flores v. Fourth Ct. of Appeals,* 777 S.W.2d 38, 41 (Tex.1989).

Samlowski argued in his motion to dismiss, and argues here on appeal, that the statements in the expert report are conclusory and reveal no causal connection between the alleged negligent acts and the injuries, harm, or damages suffered by Wooten. Wooten disagrees with Samlowski's characterization of the report but cannot point to any specific statement made in the report that relates to the causal relationship between the breach of the standard of care and the injuries, harm, or damages claimed. She contends that the expert's discussion of causation occurs "in bits and pieces" throughout his report. We have reviewed the four corners of the report and have found no statements of causation. There are many statements regarding the standard of care and many, many detailed statements regarding Samlowski's failure to adhere to the standard of care. However, we can find no statements that link a specific failure to follow a standard of care to a specific injury, harm, or damage to Wooten.

Because we can find no specific statements of causation within the four corners of the report, the report cannot meet the two purpose test of *Palacios* and cannot constitute a good faith effort. Thus, the trial court did not err in its determination that Wooten's report does not represent an objective good faith effort to comply with the definition of an expert report, and did not abuse it's discretion in dismissing Wooten's suit. Wooten's first issue should be overruled.

### CONTINUANCE

By her second issue, Wooten argues that the trial court erred "in not granting [her]

request for a thirty (30) day extension" to cure the deficiency in the report. *See* TEX. CIV. PRAC. & REM.CODE 74.351(c) (Vernon Supp.2007). Because the term "may" as used in subsection (c) vests the trial court with discretion to grant a 30–day extension, we review the decision of the trial court in granting or denying a motion for an extension of time under section 74.351(c) by an abuse of discretion standard. *Bosch v. Wilbarger Gen. Hosp.*, 223 S.W.3d 460, 465 (Tex.App.-Amarillo 2006, pet. denied); *Hardy v. Marsh*, 170 S.W.3d 865, 870–71 (Tex.App.-Texarkana 2005, no pet.). Nothing in this record indicates that the district court clearly abused its discretion in not allowing Wooten a 30–day extension to cure the deficiencies in her report. Her second issue should also be overruled.[1]

### CONCLUSION

We should overrule each of Wooten's issues and affirm the trial court's judgment. Because the majority does not, I dissent.

TOM GRAY, Chief Justice, dissent to denial of motion for rehearing.

Pending before the Court is Samlowski's motion for rehearing. *Wooten v. Samlowski*, 282 S.W.3d 82. The appeal involves expert reports required by Section 74.351 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2007). The majority's existing opinion concluded that "the trial court did not err or abuse its discretion in determining that the report does not represent a good-faith effort to sum-

---

1. Wooten urges us to remand to the trial court for the consideration of a 30 day extension. She cites to a plethora of cases as support for her request. Those cases are inapplicable here. In those cases, the appellate court reversed the trial court's denial of a doctor's or hospital's motion to dismiss and remanded the case for, in most cases, the consideration of a request for an extension not previously considered. Here, the motion to dismiss was granted and Wooten's request was considered and denied.

marize the causal relationship between Dr. Samlowski's failures to meet the applicable standards of care and Wooten's claimed injury, harm, and damages." *Wooten,* at 90–91. I agreed. Two paragraphs later, however, the majority opinion concluded "[w]hile the report is technically deficient because of the inadequate causal link, the report can only be described as a good-faith *attempt* to comply with [the statute]." *Id.* (Emphasis in original). I disagreed. My mind is not capable of determining the niceties of the distinction that could make what was *not* a good-faith *effort* nevertheless be a good-faith *attempt.* I dissent to the denial of the motion for rehearing.