

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00099-CV

_____

MARIAN K. QUERRY, D.O., Appellant

V.

PEGGY SANDERS AND JAMES SANDERS, Appellees

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 103-08

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

As Dr. Marian K. Querry was performing laparoscopic surgery on Peggy Sanders, for the purpose of removing Sanders' gallbladder, Querry saw, in the laparoscope's field of view, a duct in an unusual location and one Querry decided was a cystic duct she was to cut as one of the steps toward the gallbladder's removal.[1]  She cut it.  Unfortunately, the duct proved to be Sanders' main bile duct.  In this healthcare liability suit by Sanders[2] against Querry, it is claimed that cutting Sanders' main bile duct ultimately caused Sanders' liver to fail.

Querry unsuccessfully sought to have the trial court dismiss Sanders' suit based on alleged failure to tender an expert report by a qualified physician.  We reverse that ruling in part and affirm it in part because we find that (1) Sanders' expert was qualified to render the report, (2) the expert report sufficiently addressed standard of care and breach on two claims, (3) the expert report was deficient on the issue of causation on those two claims, (4) the causation deficiency can be cured, and (5) the expert report failed to address one claim.  We reverse the trial court's judgment on the unaddressed claim and reverse and remand on the remaining two claims for the trial court's assessment of whether to grant a thirty-day extension to cure the causation deficiency.

---

[1]The cystic duct is clipped two or three times and a cut is made between the clips, freeing the gallbladder to be taken out.

[2]The lawsuit was filed by Peggy Sanders and her husband, James Sanders, but we refer to them as Sanders in this opinion, except where the context requires otherwise.

Sanders' complaint alleged that Querry was negligent in the performance of the surgery because she:

(1) failed to properly identify and isolate the main bile duct prior to initiating the main procedure;

(2) failed to discontinue the laparoscopy when she encountered a "variant" in Sanders' anatomy; and

(3) failed to use the correct surgical procedure when she identified the "variant" in Sanders' anatomy.

Sanders retained Stephen J. Ferney, M.D., to provide an expert opinion against Querry. After receiving the report, which consisted of a two-page letter to Sanders' attorney, accompanied by a curriculum vitae (CV), Querry filed a motion to dismiss the suit under Rule 74.351(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2008). The motion alleged that the letter was not a good faith attempt to meet the statutory requirements of an expert report designed to provide a fair summary of the expert's opinion on the standards of care and causation. Ferney's qualifications were also challenged. At the hearing on the motion to dismiss, Querry argued that, because Ferney was neither a surgeon nor a recipient of any general surgery training, but rather a gastroenterologist, he was not qualified to offer an opinion on the standard of care in this case. Denying the motion to dismiss, the trial court determined Ferney was qualified and that the letter met the statutory definition of an expert report.

Querry properly sought appeal of this interlocutory order denying the motion to dismiss. *See Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008); *Longino v. Crosswhite*, 183 S.W.3d 913, 915 (Tex. App.—Texarkana 2006, no pet.).

3

A trial court's decision to deny a motion to dismiss based on Section 74.351 is reviewed for an abuse of discretion. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Longino*, 183 S.W.3d at 916; *Daniels v. Yancey*, 175 S.W.3d 889, 893 (Tex. App.—Texarkana 2005, no pet.). To reverse the trial court's decision on this matter, we must find that the court acted arbitrarily or unreasonably without reference to guiding rules or principles. *Longino*, 183 S.W.3d at 916. In reviewing this matter, we may not substitute our opinion for the trial court's judgment. *Wright*, 79 S.W.3d at 52.

*(1)     Sanders' Expert Was Qualified to Render the Report*

Before a document can be considered as an expert report in a medical malpractice case, it must be rendered by a physician qualified to testify as an expert on a particular matter. TEX. CIV. PRAC. & REM. CODE ANN. § 74.401 (Vernon 2005). Section 74.401 directs that Ferney will qualify if he is a physician who: (1) is practicing medicine or was practicing medicine when the claim arose; (2) has knowledge of the accepted standards of care; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of medical care. *See id.* In determining whether Ferney's experience qualifies him to offer an opinion on the standard of care, the trial court looks at whether he is board certified or has other substantial training or experience in the area of practice, and whether he is actively practicing medicine in rendering care relevant to Sanders' claim. *See id.* It is Sanders' burden to demonstrate Ferney had the requisite knowledge,

4

skill, and experience that would qualify him as an expert in this case. *See Broders v. Heise*, 924 S.W.2d 148, 149, 151 (Tex. 1996).

Ferney's CV states he is a board-certified gastroenterologist licensed to practice medicine in Texas; among the listed board certifications are "Diplomate, American Board of Internal Medicine" and "Diplomate, American Board of Internal Medicine—Subspecialty Gastroenterology." He received his bachelor's degree in biological sciences from Stanford University and his medical degree with internal medicine emphasis from the University of Utah. He served his internship and residency in internal medicine at Southwestern Medical School (Parkland) in Dallas, Texas. His CV also lists a fellowship at Southwestern Medical School (Parkland, Baylor at Dallas, Children's Medical Center, and Dallas Veterans' Administration) in "Gastroenterology/Liver." Since 1982, he has been an active medical staff member of the Harris Methodist H.E.B. Hospital and a teaching staff member of the GI division of Parkland Hospital. He is also a member of a clinical GI group called Digestive Health Associates of Texas. Ferney has held three listed teaching positions for the GI Division of Southwestern Medical School: Assistant Clinical Professor (1982–97), Associate Clinical Professor (1997–2002), and Clinical Professor (since 2003).[3] At least as Assistant Clinical Professor, his duties included "teaching endoscopic skills and clinical management." Ferney's CV lists his medical practice as being located in Euless, Texas, "[u]ntil August 2001" and in Bedford, Texas, thereafter. Among his professional memberships, Ferney cites memberships in the American College of

_____

[3]These are volunteer faculty positions.

Gastroenterology and the American Gastroenterology Association. The CV also lists that Ferney was elected in 2001 to a Fellowship in the American College of Gastroenterology, that he is currently serving a three-year term as Governor for North Texas for the American College of Gastroenterology, that, in 2007, he was elected both as Fellow of the American Gastro Association and to the Board of the Texas Society for Gastrointestinal Endoscopy.

Laparoscopic surgery belongs to the broader field of endoscopy. *See Lively v. Blackwell*, 51 S.W.3d 637, 639 n.1 (Tex. App.—Tyler 2001, pet. denied).

Although this Court is confined to the "four corners" of the expert report (and the accompanying CV) in assessing qualifications, Querry agreed at the hearing that Ferney was actively practicing medicine and that there is no "recognizable difference" between "an M.D. and a D.O." *See Sanjar v. Turner*, 252 S.W.3d 460, 464 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Palacios*, 46 S.W.3d at 878). He further stated that D.O.s and M.D.s "for all intents and purposes under the Texas Medical Board are both . . . physicians . . . [who] go through the same school . . . and are . . . subject to the same board examinations." Querry argued, however, that it was the difference in specialty, and the assertion that gastroenterologists do not perform surgery, that disqualified Ferney as an expert witness for Sanders.

Sanders argued that Querry is a general surgeon, is not board certified, and was performing a very common procedure that "is capable of being performed by any medical doctor and any doctor of osteopathic medicine." Sanders claims Ferney was qualified to perform the common, ordinary laparoscopic procedure, and provided the "same type of training [] Querry had in this case."

6

We conclude that it was within the trial court's discretion to find Ferney qualified to render an expert opinion against Querry. First, contrary to Querry's assertions, the Texas Supreme Court has established that an expert need not be in the same specialty as the defendant healthcare provider as long as he or she possesses knowledge, skill, or experience on the specific issue before the court. *See Broders*, 924 S.W.2d at 153; *see Kelly v. Rendon*, 255 S.W.3d 665, 674–75 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (doctor of internal medicine was qualified to render expert opinion against plastic surgeon).

Querry did not question the fact that Ferney's CV demonstrates he was actively practicing medicine. It was within the trial court's discretion to conclude that Ferney had knowledge of the accepted standards of care based on his general medical training, his training and knowledge in the fields of internal medicine and gastroenterology, and his teaching of endoscopic procedures. Further, the above list, Ferney's board certification, and the fact that the field of endoscopy encompasses laparoscopic procedures, lead us to conclude the trial court did not act without reference to guiding rules or principles when determining that Ferney was qualified to make the expert report in this case. *See Broders*, 924 S.W.2d at 153; *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 344 (Tex. App.—Texarkana 2004, pets. denied [2 pets.]).

7

*(2)    The Expert Report Sufficiently Addressed Standard of Care and Breach on Two Claims*

A healthcare liability "claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2007). On the deadline date,[4] Sanders served Querry with Ferney's report. That report must have provided

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The document did provide the following opinions authored by Ferney:

> In the course of the laparoscopy, however, the surgeon identified a duct which was initially thought to be the cystic duct and dissection was carried out. It was described "it appeared to have two structures adherent to itself which could not be dissected apart." The surgeon continued to employ a laparoscopic technique despite identifying what appeared to be a variant of the patient's expected anatomy. In the course of continuing to perform this procedure through the laparoscopy, ultimately, it was recognized that there was bile present in the operative field. This was correctly recognized as consistent with a biliary tract injury. At that point, the patient was opened, and was found to have two common bile duct injuries—there was damage to the anterior surface of the common duct just prior to the cystic duct "coming off", as well as a total transection just above the point in the common hepatitic bile duct. The surgeon recognized that there had been a biliary tract injury and decided to transfer the patient to Dr. Katz at Presbyterian Hospital in Dallas. A Jackson Pratt drain was placed prior to closing the abdomen. It is my opinion that Dr. Querry failed to meet standard of care by proceeding to attempt laparoscopic removal of the

---

[4]Sanders' original petition had been filed February 11, 2008.

8

gallbladder in the face of unusual anatomy. Standard of care would be to recognize limitation of laparoscopic surgery and to convert to an open procedure. It is my opinion that the two injuries to the bile duct resulted either from further attempts at dissection, or misidentification of the common bile duct as a cystic duct with resultant transection of the wrong duct.

Querry complains that the letter did not meet the statutory definition of an expert report. A trial court must grant a motion to dismiss if it appears that the report does not present an objective good-faith effort to comply with the statutory definition of an expert report. *Wright*, 79 S.W.3d at 51; *Longino*, 183 S.W.3d at 916. The trial court's decision regarding adequacy of an expert report is also reviewed under an abuse of discretion standard. *Longino*, 183 S.W.3d at 916.

A good-faith effort requires that the report discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Id.* at 916; *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 875. The report can be informal and is not required to prove Querry's liability, but must provide notice of what conduct forms the basis of Sanders' complaints, and a basis for the trial court to make that initial evaluation of the claims. *See Longino*, 183 S.W.3d at 917. A report that merely states an expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Id.*; *Wright*, 79 S.W.3d at 52. Rather, the expert must explain the basis of his or her statements to link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52.

This Court's opinion in *Longino* is instructive. In that case, an emergency room physician prescribed some medications to a child presenting with symptoms of a possible upper respiratory

9

infection, nausea, vomiting, and fever and instructed his parents to return in twenty-four hours if the child's symptoms persisted. *Longino*, 183 S.W.3d at 915. The parents returned with the child within twenty-four hours, and the emergency room physician consulted via telephone with the child's pediatrician. *Id.* The pediatrician ordered tests that diagnosed the child with bacterial meningitis. *Id.* Although the child eventually recovered, he sustained significant and permanent neurological injuries. *Id.* An expert report produced in the resulting lawsuit, aimed at the emergency room physician and the pediatrician, attempted to set the standard of care in stating that "a prudent physician would have at least become alarmed by [the child's] symptoms, would have promptly performed a diagnostic lumbar puncture, and would have aggressively initiated treatment with the appropriate combination of antibiotics." *Id.* at 917. This Court held that the expert report was insufficient as to the pediatrician because it contained no information about how he breached the standard of care apart from the emergency room physician's breach. *Id.* In other words, this Court held the report was sufficient as to the emergency room physician because it provided "specific information about what the defendant should have done differently." *Id.* at 917–18; *see Russ,* 128 S.W.3d at 341–43.

Here, Ferney, albeit in a cursory manner, described what Querry should have done differently. The report states that the standard of care required Querry, on discovering Sanders' unusual anatomy, to stop the laparoscopic removal of her gallbladder and convert to an "open" procedure. This language informed Querry of the conduct of which Sanders complains—failure to discontinue the laparoscopy and to convert to an open procedure as soon as she discovered unusual anatomy instead

10

of transecting what she thought was a cystic duct. As to those two claims by Sanders, we cannot say the trial court acted arbitrarily or unreasonably without reference to guiding rules or principles when deciding that standard of care and breach were adequately set forth. *See Estate of Birdwell ex rel. Birdwell v. Texarkana Mem'l Hosp., Inc.*, 122 S.W.3d 473 (Tex. App.— Texarkana 2003, no pet.). We overrule this point of error.

*(3)      The Expert Report Was Deficient on the Issue of Causation*

"A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute." *Palacios*, 46 S.W.3d at 878. "To constitute a good-faith effort to establish the causal-relationship element, the expert report must fulfill *Palacios*' two-part test" which: (1) requires the report to inform the defendant of the specific conduct called into question; and (2) provides a basis for the trial court to conclude the claims have merit. *Wright*, 79 S.W.3d at 52; *Chandler v. Singh*, 129 S.W.3d 184, 188 (Tex. App.—Texarkana 2004, no pet.). When addressing causation, Ferney's report must contain more that conclusory insights about Sanders' complaints. It must explain the basis of the statements and link the conclusions to the facts. *Moore v. Southerland*, 107 S.W.3d 786, 790 (Tex. App.—Texarkana 2003, pet. denied).

Ferney's letter stated: (1) tests before the operation indicated normal liver function and good flow of bile in the bile duct; (2) once the unusual anatomy was located, the laparoscopy should have stopped and the surgeon should have commenced with an open procedure; (3) the doctor failed to stop the laparoscopy; and (4) she transected Sanders' bile duct as a result of either "further attempts at dissection, or misidentification of the common bile duct." The report did not address the damage

11

claimed in the petition—liver failure. Although one might think liver failure was the obvious consequence of the bile duct transection, this type of information should not be inferred by the courts. *See Bogar v. Esparza*, 257 S.W.3d 354, 362 (Tex. App.—Austin 2008, no pet.) (The four corners requirement "precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended."). Liver failure can be caused by many factors, including the presence of gallstones. Because Ferney never specifically stated in his report that the transection of the bile duct resulted in Sanders' liver failure and did not address exactly how the open procedure could have prevented the transection, we think the trial court did not have a proper basis to conclude that Sanders' complaints had merit as related to the claimed damage of liver failure. On the issue of causation, the report was deficient.

*(4)    The Causation Deficiency Can be Cured*

In Sanders' reply to Querry's motion to dismiss, Sanders requested a thirty-day extension in which to cure any deficiencies. Section 74.351(c) of the Texas Civil Practice and Remedies Code states, "if an expert report has not been served within the period specified by subsection (a) because elements of the report are found deficient, the Court may grant one 30-day extension to the claim in order to cure the deficiency."[5] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(C). Since we determine

---

[5]*See Wooten v. Samlowski*, No. 10-07-00305-CV, 2008 WL 2133072, at *7 (Tex. App.—Waco May 21, 2008, pet. filed) ("As we have discussed, Dr. Patman's report is thorough, well-detailed, and—except for one small and easily curable deficiency—patently and sufficiently specific to inform Dr. Samlowksi of the conduct that Wooten calls into question and to provide a basis for the trial court to conclude that Wooten's claims have merit. While the report is technically deficient because of the inadequate causal link, the report can only be described as a good-faith

the report is deficient on the causation issue, we remand the case for further proceedings, including consideration of the extension request. *See Woofter v. Nernitez*, No. 01-06-01123-CV, 2008 WL 2466223, at *2 (Tex. App.—Houston [1st Dist.] June 19, 2008, no pet.) (mem. op.) (after finding proposed expert unqualified to testify as to standard of care, court remanded for further proceedings to allow trial court to consider thirty-day request to cure deficiencies in expert's report); *Baker v. Gomez*, 276 S.W.3d 1, 8 (Tex. App.—El Paso 2008, pet. denied) (reversed for insufficiency in addressing standard of care and breach, and causation, but remanded to allow consideration of thirty-day extension); *see also Bogar*, 257 S.W.3d at 364–65.

*(5)     Ferney's Report Failed to Address One Claim*

Although the courts are confined to the four corners of Ferney's expert report, the report must be read in conjunction with the pleadings to determine if it provides a basis for Sanders' claims. *See Palacios*, 46 S.W.3d at 878. The Sanders' second and third claims allege Querry was negligent in failing to discontinue the laparoscopy when she encountered a "variant" in anatomy and in failing to use the correct surgical procedure after having encountered the "variant." The expert report discusses the anatomical anomaly encountered and provides that the "standard of care would be to recognize the limitations of laparoscopic surgery," and convert to an open procedure. Aside from the curable causation deficiency, the trial court could conclude, in its discretion, that Ferney's report provided a basis to allege the second and third negligence claims against Querry.

---

attempt to comply with subsection 74.351(r)(6). It appears that a supplemental report by Dr. Patman could easily cure the deficiency.").

Sanders also alleged, however, in the first claim, that Querry was negligent in failing to properly identify and isolate the main bile duct before initiating the main procedure. The expert report wholly fails to address this claim. It does not state how the surgeon could identify the main bile duct before a laparoscopy, or even whether the standard of care requires such a determination. Since the report is silent on this claim, that claim should have been dismissed as required by the statutory scheme. *See Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 292 (Tex. App.—Fort Worth 2008, pet. denied) (report insufficient as to claims with respect to negligence in pre-operative care and reversing in part while finding report sufficient as to claim for negligence in post-operative care and affirming in part); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(2). Since failure to address a claim in a medical malpractice case is not a curable deficiency, we reverse the trial court's judgment as to Sanders' first claim.

We find that Ferney was qualified to render an expert opinion against Querry in this case. Ferney's report is sufficient on the issues of standard of care and breach on claims two and three, but is deficient as to the causation element because it fails to link the transection of the bile duct to liver failure. With respect to claims two and three—Querry's alleged negligence in failing to discontinue the laparoscopy when she encountered a "variant" in Sanders' anatomy, and failing to use the correct surgical procedure—we reverse and remand for a determination by the trial court as to whether an extension should be granted to cure the causation deficiency. Because Ferney's report wholly failed to address claim one—Querry's alleged negligence in failing to properly identify and isolate the main

14

bile duct before initiating the main procedure—we reverse the trial court's decision denying Querry's motion to dismiss as to that claim, and we dismiss that claim.


Josh R. Morriss, III
Chief Justice

Date Submitted:     April 2, 2009
Date Decided:       April 24, 2009