Alonso E. LÓPEZ, Jr. and Ofelia Sylvia Jenkins, Individually and As Personal Representatives of the Estate of Alonso E. López, Sr., Deceased, Sylvia A. López, Rosie Sprague, Gloria A. San Miguel, Yolanda López, and Hector F. López, Appellants,

v.

Oscar J. MONTEMAYOR, D.D.S, Douglas Caceres, M.D., Individually and d/b/a Star Anesthesia, P.A., Star Anesthesia, P.A., Leo Cuello, M.D., and Baptist Health System d/b/a Baptist Medical Center, Appellees.

No. 04–03–00174–CV.

Court of Appeals of Texas, San Antonio.

Nov. 19, 2003.

Rehearing Overruled Feb. 4, 2004.

Sonia M. Rodriguez, James L. Branton and Jason P. Hoelscher, Branton & Hall, P.C., San Antonio, for Appellant.

Paul M. Green, Green & DuBois, P.C., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

This is an appeal from the dismissal of a medical malpractice claim for failure to timely file an expert report pursuant to section 13.01 of the Medical Liability and Insurance Improvement Act. *See* TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp.2003). Alonso López, Jr., and Ofelia Jenkins, individually and as personal representatives of the estate of Alonso López, Sr., deceased, together with Sylvia López, Rosie Sprague, Gloria San Miguel, Yolanda López, and Hector López (collectively "the López Family") challenge the trial court's dismissal of their claims against Oscar Montemayor, D.D.S., Douglas Caceres, M.D., individually and d/b/a Star Anesthesia, P.A., Star Anesthesia, P.A., Leo Cuello, M.D., and Baptist Health System d/b/a Baptist Medical Center. The López family argues the trial court abused its discretion in dismissing the family's claims for failure to file an adequate expert report. In the alternative, the López family contends the trial court should have granted them a grace period to file an adequate report. We hold that the López family's report from Ashley Goodman, D.D.S., DABFD does not meet the requirements of article 4590i. We further hold that the López

family was not entitled to a section 13.01(g) grace period to cure the deficient report.

### BACKGROUND

On December 2, 1999, Oscar Montemayor performed a dental procedure on Alonso López, Sr. which required the removal of a dental bridge.[1] During the course of the procedure, López appeared to have swallowed the dental bridge Montemayor was removing. Unbeknownst to Montemayor, however, López had in fact aspirated the dental bridge to his right lung. Montemayor was unaware López aspirated the dental bridge because Montemayor did not order any X-rays to ascertain the true location of the bridge. Because Montemayor believed López had swallowed the dental bridge, he merely instructed López to allow the bridge to pass through his intestinal system naturally. López, believing he had simply swallowed the dental bridge, did not seek medical attention following his procedure. López, however, soon grew concerned about his health when he developed a fever and did not excrete the dental bridge. López subsequently sought medical attention. López soon learned he had aspirated his dental bridge into his right lung. On December 11, 1999, López was admitted to Baptist Medical Center where physicians performed a bronchoscopy. López's physicians were unsuccessful in their attempt to remove the dental bridge from López's lung. During the surgery, López suffered a severe drop in his blood pressure and heart rate. As a result of theses changes, López became comatose. López eventually died on January 17, 2000.

On October 4, 2001, the López family, represented by attorney Carol Lomax,

---

1. A dental bridge is "a partial denture anchored to adjacent teeth." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 179 (9th ed.1991).

sued Montemayor; Baptist Medical Center, the place where López's bronchoscopy occurred; Leo Cuello, M.D., the doctor who performed the bronchoscopy; and Douglas Caceres, M.D., López's anesthesiologist. In accordance with article 4590i section 13.01, Lomax attached an expert report from Ashley Goodman, D.D.S., DABFD to the López family's petition. Goodman, a dentist, stated that Montemayor deviated from the accepted standard of care for dentists in his care of López and that it was the aspiration of the dental bridge that caused López's demise.

On January 31, 2002, Lomax appended three additional reports to the López's petition: a report by a hospital administrator, who opined that Baptist Medical Center did not adequately document López's medical chart; a report by a physician regarding Dr. Cuello's conduct during López's bronchoscopy; and a report from an anesthesiologist, who opined that the pre-operative care López received from Dr. Caceres fell below the reasonable standard of care. The López family did not file any other reports in support of their cause before the April 2, 2002 deadline for filing such reports.

In April of 2002, the López family's attorney became ill and was hospitalized. Lomax was not discharged from the hospital until May of 2002. Although Lomax was discharged from the hospital, she was unable to practice law on a full-time basis after her release. By late August 2002, Lomax was immobile and unable to leave her home. On August 29, 2002, Lomax was admitted to a hospital for a second time. Shortly thereafter, another attorney from Lomax's firm, Jason Hoelscher, undertook representation of the López family.

In January and February of 2003, appellees filed motions to dismiss the underlying lawsuit, arguing that the López family's reports did not meet the requirements of article 4590i section 13.01(r)(6). In response, the López's new attorney argued that the reports adequately set forth the relevant standards of care, the manner in which appellees deviated from such standards, and the causal relationship between the appellees' failure to meet the applicable standards of care and the deceased's injury. The López's attorney also requested a 30-day grace period under article 4590i section 13.01(g) to file amended expert reports in the event the court determined the López family's reports were deficient. The López's attorney claimed that the Lópezes were entitled to a grace period because Lomax's failure to file adequate expert reports before article 4590i's deadline was not intentional or the result of conscious indifference; rather, it was the result of Lomax's unexpected physical and mental deterioration brought about by her illness.

The trial court dismissed the López family's causes of action with prejudice on February 24, 2003 after determining the family's reports did not meet the requirements of article 4590i section 13.01(r)(6) and that they were not entitled to a section 13.01(g) grace period to amend their reports. The López family subsequently brought this appeal, challenging the trial court's ruling as to each of the appellees. Soon after the López family filed their notice of appeal, however, the parties filed an agreed motion to dismiss the appeal as to appellees Douglas Caceres, M.D., individually and d/b/a Star Anesthesia, P.A., Star Anesthesia, P.A., Leo Cuello, M.D., and Baptist Health System d/b/a Baptist Medical Center. We granted the motion and dismissed the appeal as to all of the appellees except appellee Montemayor.[2]

---

**2.** See *Jenkins v. Montemayor,* No. 04–03– 00174–CV, 2003 WL 21653881, *1 (Tex.App.-

## DISCUSSION

On appeal, the López family raises two issues. First, the López family complains that the trial court erred by concluding the report of Ashley Goodman, D.D.S, DABFD failed to meet the requirements of article 4590i section 13.01(r)(6). Second, the López family argues that even if Goodman's report is inadequate, they demonstrated sufficient grounds for the court to grant them a section 13.01(g) grace period within which to file an amended expert report.

### Expert Reports Under the Act

■ The López family argues Goodman's report was sufficient to meet the requirements of article 4590i section 13.01. Medical malpractice plaintiffs are required to provide each defendant physician and health care provider an expert report with the expert's curriculum vitae, or they must voluntarily non-suit the action within 180 days of filing suit. Tex.Rev.Civ. Stat. Ann. art. 4509i, § 13.01(d) (Vernon Supp.2003); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001). The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex.Rev.Civ. Stat. Ann. art. 4509i, § 13.01(r)(6). If a plaintiff timely files an expert report, the defendant may move to challenge the adequacy of the report. *Id.* § 13.01(*l*). The trial court must grant the defendant's motion if it determines, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report found in subsection (r)(6). *Id.* To constitute a "good faith effort," the report must fulfill the dual purpose of informing the defendant of the conduct the plaintiff has called into question and providing a basis for the trial court to conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879.

■ In deciding whether the statutory standard is met, a trial court must stay within the four corners of the expert report. *Id.* at 878. The report does not need to marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in article 4590i: standard of care, breach, and causal relationship. *Id.* "A report cannot merely state the expert's conclusions about these elements." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). It is imperative that the expert "explain the basis of his statements to link his conclusions to the facts." *Id.* (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999)).

■ We review a trial court's ruling as to the adequacy of an expert report under an abuse of discretion standard. *Palacios*, 46 S.W.3d at 878. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court's. *See Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41 (Tex.1989).

San Antonio July 16, 2003, no pet.). In our opinion, we noted that we would assess costs against the López family regarding appellees Douglas Caceres, M.D., individually and d/b/a

Star Anesthesia, P.A., Star Anesthesia, P.A., Leo Cuello, M.D., and Baptist Health System d/b/a Baptist Medical Center upon the final disposition of the appeal.

## Goodman's Report

██ Montemayor argues we should affirm the trial court's ruling because Goodman is not qualified to render an expert opinion as to causation. Moreover, Montemayor claims that even if Goodman is qualified to render an opinion on each of the elements identified in article 4590i, Goodman's report is deficient regarding the element of causation. We agree.

Montemayor contends that Goodman is qualified to render an opinion only as to the applicable standard of care and whether Montemayor breached that standard. He argues Goodman is not qualified to render an opinion as to causation because López's "alleged damages resulted from a medical rather than a dental condition." The López family does not dispute Montemayor's contention that López's damages resulted from a medical condition. Nevertheless, the López family believes Goodman, a dental expert, is qualified to render an opinion on causation because she is on staff at three hospitals and is a former member of the Dental Professional Liability Division of an insurance company. Goodman, however, concedes in her report that despite her past professional experience, she is not qualified to express an opinion on all of the issues addressed within her report. Goodman specifically states "[t]hese opinions are per a dental expert's conclusions and should be confirmed with a medical expert's opinion in all areas not within this dental examiner's area of expertise." From the plain language of Goodman's report, it is clear that Goodman does not consider herself qualified to render an opinion on the specific medical matter involved in this case. Consequently, the trial court could have properly concluded that Goodman is not qualified to render an opinion as to causation.

In any event, even if we were to assume Goodman is qualified, her report merely states her conclusion about causation. As noted by the supreme court in *American Transitional Care Centers of Texas, Inc. v. Palacios*, "[a] report that merely states the expert's conclusions about the standard of care, breach, and causation does not" fulfill the dual purpose of informing the defendant of the conduct the plaintiff has called into question and providing a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879.

Goodman's report provides in pertinent part:

**Conclusion:**

It is my considered expert opinion, based upon a reasonable degree of dental certainty, that Dr. Montemayor deviated from the accepted standard of care (December 1999) by not requesting the patient receive a chest x-ray to evaluate for aspiration. Whenever a dental appliance is swallowed/aspirated, and there is any doubt as to ingestion v. aspiration, an evaluation by radiographic means is mandatory.

Peer reviewed and professional published studies and reviews indicate that aspiration of foreign bodies may take place without coughing, wheezing, etc. The absence of such symptoms does not indicate ingestion to the alimentary tract versus possible aspiration to the lungs. Whenever a possible aspiration during dental treatment may be reasonably anticipated, a prudent dental practioner should use means such as a throat pack and/or ligation of the object to prevent aspiration and possible grave consequences.

A reasonably prudent dentist in the same or similar locality and at the same period of time would have provided for radiographic evaluation along with medical referral for any possible chance of aspiration. Additionally, it is the aspiration of the bridge section which caused

and precipitated the medical circumstances leading to the patient's demise. These opinions are per a dental expert's conclusions and should be confirmed with a medical expert's opinion in all areas not within this dental examiner's area of expertise.

To establish a causal relationship between Montemayor's alleged breach of the standard of care and López's injury, the López family relies on the following statement from Goodman's report: "Additionally, it is the aspiration of the bridge section which caused and precipitated the medical circumstances leading to the patient's demise." They argue that this statement is not conclusory because it explains "the causal relationship between [Montemayor's] failure [to meet the applicable standard of care] and Mr. López's injury."

In *Bowie Memorial Hospital v. Wright,* Barbara Wright suffered fractures in her right knee and foot during a car accident and sued for damages after a Bowie Memorial Hospital physician's assistant misplaced or misread her x-rays and, therefore, did not discover the fracture in the right foot. *Wright,* 79 S.W.3d at 50. The fracture was discovered a month later and required Wright to undergo two surgeries over a ten-month period. *Id.* Wright complained that if the physician's assistant had diagnosed her fractured foot earlier she "probably would have had a better outcome." *Id.* at 51. To establish a causal relationship between the breach of the standard of care and her injury, Wright relied on the following statement from her expert report: "if the x-rays would have

been correctly read and the appropriate medical personnel acted upon those findings then [Wright] would have had the possibility of a better outcome." *Id.* at 52–53. Wright argued that this statement "explains why [her] damages were caused by the [defendant's] breach." *Id.* at 53. The *Wright* court held that the report's conclusory statement that Wright might have had "the possibility of a better outcome" did not constitute a good faith effort to comply with the statute's causation requirement because it did not provide information linking the expert's conclusion that Wright might have had a better outcome to the defendant's failure to correctly read and act upon the x-rays. *Id.* The court determined the report was conclusory and held "[a] conclusory report does not meet [Article 4590i's] requirements, because it does not satisfy the *Palacios* test." *Id.*

Like the statement in *Wright,* Goodman's statement that "it is the aspiration of the bridge section which caused and precipitated the medical circumstances leading to the patient's demise" is conclusory, and does not constitute a good faith effort to comply with the statute's causation requirement. Goodman's statement simply does not provide information linking Montemayor's actions to López's death.[3] *See id.* The López family's first issue is therefore overruled.

The López family asserts for the first time in their reply brief that even if Goodman's report is deficient regarding causation, they may, pursuant to article 4590i section 13.01(i),[4] rely on the expert report

---

**3.** We express no opinion as to whether Goodman's report adequately sets forth the elements of applicable standard of care and breach.

**4.** Article 4590i section 13.01(i) provides:

[n]otwithstanding any other provision of this section, a claimant may satisfy any

requirement of this section for filing an expert report by filing reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a

of Donald Patrick, M.D. to prove causation. The López family believes Dr. Patrick's report adequately sets forth his opinion on the causal relationship between Montemayor's alleged breach and López's demise. The López family focuses on the following excerpt from Dr. Patrick's report:

> [a]lthough I am not qualified to serve as a dental expert, I can state that the failure to promptly identify the presence of the foreign body at the time of aspiration made it impossible to remove by bronchoscopy. This is the result of edema that develops in the irritated bronchial tissue; thereby narrowing the orifice and actually obscuring the foreign object from bronchoscopic view. The delay in treatment violates the standard of care of medicine. It is highly probable that the bridge could have been removed within several hours by bronchoscopy and no untoward events would have occurred.

The López family further argues that because they can satisfy all of 4590i's requirements through the reports of Dr. Patrick and Goodman, the trial court erred by dismissing their claims.

■ We need not address the merits of the López family's contention because their argument is not properly before the court. The López family attempts in their reply brief to raise new issues not addressed in either their original brief or the appellee's brief. Texas Rule of Appellate Procedure 38.3 merely permits an appellant to address "any matter in the appellee's brief." TEX.R.APP. P. 38.3. A reply brief is not intended to allow an appellant to raise new issues. Nowhere in appel-

lants' original brief is there any argument pertaining to section 13.01(i) or the adequacy of Dr. Patrick's report. Likewise, Montemayor's brief lacks any reference to section 13.01(i) or Dr. Patrick's report.

### Thirty Day Grace Period Under Section 13.01(g)

As an alternative to arguing that Goodman's report complied with the requirements of article 4590i, the López family contends the trial court erred by refusing to grant them a 30–day grace period within which to file an amended expert report. Article 4590i section 13.01(g) provides that a trial court shall give a plaintiff a 30–day grace period to file sufficient expert reports where the plaintiff's failure to file the reports was not intentional or the result of conscious indifference but was the result of an accident or mistake. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g) (Vernon Supp. 2003). As the supreme court noted in *Walker v. Gutierrez,* this standard mirrors the standard that governs setting aside a default judgment or reinstating a case dismissed for want of prosecution. 111 S.W.3d 56, 63 (Tex.2003).

■ When "determining whether the failure to file an adequate report was due not to intentional disregard or conscious indifference but to accident or mistake," we look to the knowledge and acts of the claimant. *Id.* at 64. If the opposing party fails to controvert the factual assertions in the claimant's testimony, "the claimant satisfies his or her burden if the testimony sets forth facts that, if true, negate intentional or consciously indifferent conduct by the claimant." *Id.* When determining whether a claimant's factual assertions are

---

single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(i) (Vernon Supp.2003).

controverted, we may consider all the evidence in the record. *Id.* We review a trial court's ruling on a section 13.01(g) motion for relief under an abuse of discretion standard. *Id.* at 62.

■ The López family contends they were entitled to a section 13.01(g) grace period because their failure to file adequate expert reports in this instance was not due to intentional conduct or the result of conscious indifference, but was the result of an accident or mistake on the part of their attorney. Specifically, the López family claims that they were entitled to a section 13.01(g) grace period because their attorney became severely ill during the course of her representation of the family and that this unexpected illness prevented the attorney from filing adequate expert reports.[5]

At the hearing on appellees' motions to dismiss, Thomas Crosley, a member of attorney Lomax's firm, stated:

A brief synopsis of my testimony would be that from April of 2002 on[,] Carol's health was such that she was not able to practice law on a full-time basis as she was hospitalized through much of April and that she worked only sporadically through the summer and that it was not until September that the rest of us at our firm knew the true nature of her condition because she had, for her own personal privacy reasons, kept that to herself. But that during that time period from April forward she was not mentally or physically capable of practicing

law as she had before and as—as one would expect her to have done. And that . . . was a—a part of the reason for her not being able to get discovery and scheduling depositions and things of that nature and had she not had health problems we wouldn't be here now arguing about this because we would have been able to more fully to conduct discovery in this case and would have gotten all the records.

Crosley again repeated at the hearing that:

In April of [2002], Carol Lomax who was lead attorney on this case became ill and was hospitalized. From that point forward her condition was such that she was not able to practice law on a full-time basis. In fact, she—when she did get out of the hospital in May of [2002], she—she would come to the office a few times a week for a short amount of time, but she was not able at that point to continue taking depositions and fully participating in discovery and doing all the things that an attorney needs to do to continue in active practice.

After reviewing Crosley's testimony, we do not believe the trial court abused its discretion when it denied the López family's request for a section 13.01(g) grace period. The López family filed their medical malpractice action on October 4, 2001. Thus, the Lópezes had 180–days from this date, or until April 2, 2002, to file their expert reports. Liberally construing Crosley's testimony, the trial court could

5.   In support of their position, the López family cites *City of Houston v. Cantwell*, No. 01–90–01045–CV, 1993 WL 271029, *1 (Tex. App.-Houston [1st Dist.] July 22, 1993, no writ)(not designated for publication) (holding assessment of death penalty sanction for failing to respond to discovery request was excessive where party's failure to respond to discovery was not the result of flagrant bad faith or counsel's callous disregard for his respon- sibilities of discovery under the rules; rather, the party's failure was related to counsel's illness and subsequent death) and *Tischler v. Watts*, 177 N.J. 243, 827 A.2d 1036, 1038 (2003) (holding extraordinary circumstances existed so as to justify an attorney's failure to file adequate expert report where attorney learned he had advanced stage lung cancer during the course of his representation of client).

have concluded that Lomax did not have health problems until April 1, 2002—the day before the deadline for filing adequate expert reports in this case. Nothing about Crosley's testimony suggests Lomax was ill or unable to adequately function as the López family's attorney for any duration of time during the 178–day period following the filing of their original petition. While this court may have reached a different conclusion under the facts presented, we must be guided by the abuse of discretion standard, and we cannot say the trial court abused its discretion by concluding the Lópezes' failure to file adequate expert reports was the result of intentional or consciously indifferent conduct. Accordingly, the López family's second issue overruled.

### Conclusion

Based on the foregoing, the trial court's judgment is affirmed.