

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00366-CV

———————————————

CRESSON INTEREST, LLC, Appellant

V.

DONALD 'ROOSTER' AND LORI BEANE, Appellees

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. C2020203

Before Kerr and Womack, JJ.; and Gonzalez, J.[1]
Memorandum Opinion by Justice Kerr

---

[1]The Honorable Ruben Gonzalez, Judge of the 432nd District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

**MEMORANDUM OPINION**

Appellant Cresson Interest, LLC sued Donald "Rooster" and Lori Beane in August 2020 for removing or damaging various fixtures and personal property from leased premises that Cresson, as the new owner of the commercial property, had asked the Beanes to vacate by June 30, 2020. The Beanes moved for no-evidence summary judgment right after the Level 1 discovery deadline for expedited cases had passed without Cresson's having fully answered the Beanes' written discovery or having supplemented its earlier incomplete responses. Cresson asked that discovery be reopened, citing its counsel's professional and personal disruptions due to the COVID-19 pandemic as good cause and asserting a lack of unfair surprise or prejudice to the Beanes. Cresson attached certain evidence to its summary-judgment response, but the trial court sustained the Beanes' objections to that evidence. The trial court declined to reopen discovery, granted the Beanes' motion, and later entered final judgment awarding attorney's fees on the Beanes' counterclaim.

Cresson asserts that the trial court abused its discretion in making all these rulings and that because the Beanes' attorney's-fees evidence was also presented after discovery closed, it should have been similarly disregarded. Even though we might have ruled otherwise, because the trial court acted within its broad discretion we must affirm.

## Background

This case turns on procedural and evidentiary matters, so we need not go into great detail about the facts underlying the parties' dispute. Briefly summarized, since 2018 the Beanes had operated Rooster's BBQ in leased space attached to a gas station and convenience store on Highway 377 in Cresson, Texas. Cresson bought this commercial real estate in February 2020 and stepped into the previous owner's shoes as the Beanes' landlord. In the late spring of 2020, Cresson gave the Beanes—who after March 31 were month-to-month tenants—notice to vacate by the end of June 2020.[2] Cresson alleged that when moving out, the Beanes removed fixtures and personal property collectively worth "more than $10,000" that had been there before Rooster's BBQ's time.

When Cresson sued two months later, it designated the case as "expedited," meaning that the compressed Level 1 discovery restrictions of Rule 190.2 applied. *See* Tex. R. Civ. P. 169 (expedited actions), 190.2 (discovery-control plan for expedited actions). Cresson sued the Beanes for breach of contract (the lease), violation of the

---

[2]Between the time of Cresson's acquisition and its demand that the Beanes leave, Texas Governor Greg Abbott declared a state-wide COVID-19 disaster on March 13, 2020. *See* The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2094, 2094–95 (2020). Also on March 13, the Texas Supreme Court issued its First Emergency Order Regarding the COVID-19 State of Disaster under the Texas Government Code. *See* Supreme Court of Texas, *First Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9042, 596 S.W.3d 265 (Tex. 2020).

theft liability act, breach of a bailment contract, and tortious interference with Cresson's contract with a replacement restaurant, BBQ on the Brazos.

## Pertinent Timeline

**August 25, 2020:** Cresson files its petition, with Rule 194.2 requests for disclosures.[3]

**September 16, 2020:** The Beanes answer and respond to disclosure requests.

**September 17, 2020:** The Beanes serve Cresson with Rule 194.2 disclosure requests, nine requests for production directing that documents be produced at defense counsel's offices 30 days later, and five interrogatories.

**October 19, 2020:** Cresson serves bareboned disclosure responses;[4] responds to eight of nine document requests by stating that documents "will be provided at a

---

[3]In 2020, the Texas Supreme Court amended Rule 194, effective January 1, 2021. A party is now required to make certain disclosures without a request. *See* Tex. R. Civ. P. 194.2; Order, Misc. Docket No. 20-9153 (Tex. Dec. 23, 2020). Provisions regarding expert disclosures and reports are now found in Rule 195.5. *See* Tex. R. Civ. P. 195.5. Because the former text applied in these proceedings, our citations are to the former rule.

[4]Cresson's disclosures did not specify or estimate the amount of its damages, nor did Cresson provide the names, addresses, and telephone numbers of persons with knowledge of relevant facts.

mutually convenient time and place"[5]; and serves unverified interrogatory answers, four-fifths of which state only, "To be supplemented."[6]

**"Late Fall" 2020:** Cresson's counsel loses her long-time legal assistant, who, due to COVID-19 fears, quits work to stay home with a handicapped son.

**Beginning of November 2020:** One of Cresson's counsel's employees is diagnosed with COVID-19, and counsel self-quarantines.

**November 8, 2020:** Cresson's counsel is herself diagnosed with COVID-19, suffering flu-like symptoms and exhaustion for two weeks; "[f]ull recovery took until after the New Year."[7]

**December 18, 2020:** Cresson produces 42 pages of documents that, although Bates-numbered, are not tied to any particular requests.[8]

---

[5]Cresson responded to the ninth request by stating that no responsive documents existed. Cresson did not object to the Beanes' request that documents be produced at its counsel's offices within 30 days.

[6]The fifth and final interrogatory asked about facts supporting Cresson's contention of a bailment agreement between Cresson and the Beanes, which Cresson answered but did not verify. *See* Tex. R. Civ. P. 197.2(d) (requiring responding party to sign interrogatory answers under oath).

[7]In a declaration supporting Cresson's motion to reopen discovery, counsel averred that her entire household and all her employees came down with COVID-19, with two of those employees requiring "repeated visits to hospitals because they were having frightening problems with breathing." Counsel's declaration further stated that the pandemic made it impossible to hire associates to whom work could be delegated. These events caused counsel "to lose dozens of productive working days." Except for the reference to two employees, the total number of those afflicted and the timeframe(s) within which all these things occurred were not specified.

**January 2021:** Cresson's counsel recovers from COVID-19 "after the New Year."

*February 23, 2021: 180-day Level 1 expedited-discovery period ends, per Rule 190.2(b).*[9]

**February 26, 2021:** The Beanes file a no-evidence summary-judgment motion on Cresson's claims; the hearing is initially set for March 31 but reset for April 15, 2021.

**March 17, 2021:** The Beanes counterclaim for attorney's fees under the lease provision that the prevailing party in any lease-related dispute can recover such fees.[10]

---

[8]*See* Tex. R. Civ. P. 196.3(c) (requiring responding party to either produce documents as they are kept in the usual course of business or organize and label them to correspond with categories in the request). Around half the produced pages consisted of the commercial lease between the Beanes and Cresson's predecessor, which the Beanes had earlier identified in their own Rule 194 disclosure responses. Cresson did not produce the documents by which it bought the property (real or personal) or was assigned the Beanes' lease by the previous owner. Nor did Cresson produce documents "related to real or personal property located at" the Highway 377 property; documents that supported its "claim of ownership of any personal property" that Cresson claimed "was removed by Defendants when they vacated the premises"; any documents or photos that "depict[ed] or describe[d] any item of personal property or its value" that Cresson claimed the Beanes wrongly removed; or any documents that supported Cresson's "claim for monetary damages." Cresson produced an *estimate* from Fort Worth Fire Extinguisher Company, but that document is not addressed to Cresson, nor does the address of the property appear, and the record does not show that Cresson accepted the estimate and paid that company.

[9]The then-applicable version of Rule 190.2(b) called for discovery to run "until 180 days after the date the first request for discovery of any kind is served on a party," a period that, here, began to run when Cresson served its petition and disclosure requests in late August 2020.

[10]On December 21, 2020, the parties had filed a Joint Case Questionnaire that suggested a three-month deadline for amending pleadings. The Beanes had mentioned

**March 22, 2021:** Cresson moves to reopen discovery or remove its case from the expedited-action process.

**March 24, 2021:** Cresson responds to the Beanes' no-evidence motion, attaching three declarations, one unsworn letter dated March 23, 2021, and four documents, only one of which (the Beanes' previous lease) Cresson had produced in December. With its motion to reopen discovery still pending, Cresson also serves amended (but still unverified) interrogatory answers.

**March 26, 2021:** The Beanes object to Cresson's summary-judgment evidence.

**April 6, 2021:** Cresson amends its motion to reopen discovery or remove the case from the expedited-action process.[11]

**April 8, 2021:** Cresson amends its response to the Beanes' no-evidence motion, attaching four declarations and the same four documents.

**April 14, 2021:** The Beanes object to Cresson's evidence.

**May 4, 2021:** Following the April 15 hearing, the trial court enters orders (1) sustaining the Beanes' objections to Cresson's summary-judgment evidence and (2) granting summary judgment to the Beanes—to become final judgment upon

---

prevailing-party attorney's fees in their original answer but made it a formal counterclaim on March 17.

[11]Cresson's counsel's revised declaration elaborated on the pandemic-related facts contained in the March 22 filing and her initial accompanying declaration.

disposition of the Beanes' counterclaim for attorney's fees—and denying Cresson's motion to reopen discovery or remove the case from the expedited process.

**May 25, 2021:** The trial court denies Cresson's May 10 motion to reconsider.[12]

### Issues on Appeal

Cresson's first issue asserts that the trial court abused its discretion by sustaining the Beanes' objections to Cresson's summary-judgment evidence and by denying Cresson's amended motion to reopen discovery.

Its second issue—that the trial court erred in granting the Beanes' no-evidence motion—stands or falls depending on our disposition of Cresson's first issue, because if the trial court properly sustained the Beanes' evidentiary objections, Cresson did not overcome the Beanes' no-evidence motion.

Cresson's third issue asserts that the trial court erred by overruling Cresson's objections to the Beanes' post-discovery-cutoff attorney's-fees evidence, by denying Cresson's no-evidence summary-judgment motion on fees, and by granting the Beanes summary judgment on their counterclaim for fees as prevailing parties under the lease.

### Applicable Law; Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that

---

[12]We will discuss the facts regarding the Beanes' counterclaim and the eventual final judgment when we address Cresson's third issue.

no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020).

We review a summary judgment de novo. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). Even so, we review a trial court's decision to exclude summary-judgment evidence for an abuse of discretion. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 90 (Tex. 2018).

A party that fails to make, amend, or supplement a discovery response in a timely manner may not introduce into evidence the material or information that was not timely disclosed, unless the trial court finds that (1) there was good cause for the failure to timely disclose or (2) the failure will not unfairly surprise or unfairly prejudice the other parties. Tex. R. Civ. P. 193.6(a). Evidence not timely disclosed is automatically excluded in the context of both trials and summary judgments. *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009) (and also noting that date for completing discovery "depends on the discovery plan level and not on the trial date"). Because exclusion is automatic, the party seeking to capitalize on Rule 193.6 need not move to compel or seek sanctions as an intermediate step. *White v. Perez*, No. 2-09-251-CV, 2010 WL 87469, at *1 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem. op.). "The purposes of this rule are to promote

9

responsible assessment of settlement and prevent trial by ambush." *In re Kings Ridge Homeowners Ass'n*, 303 S.W.3d 773, 783 (Tex. App.—Fort Worth 2009, orig. proceeding).

"The party offering the undisclosed evidence has the burden to establish good cause or lack of surprise, which must be supported by the record." *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 860 (Tex. App.—Dallas 2006, no pet.); *see also* Tex. R. Civ. P. 193.6(b). Determining whether a party has met this burden is within the trial court's "broad discretion." *Syrian Am. Oil Corp., S.A. v. Pecten Orient Co.*, 524 S.W.3d 350, 366 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). Whether evidence is admitted or excluded, we review a trial court's decision on evidentiary matters for an abuse of discretion. *Arshad v. Am. Express Bank, FSB*, 580 S.W.3d 798, 807 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015) (stating that trial court's rulings on admissibility of evidence are reviewed for abuse of discretion). We must uphold a trial court's evidentiary ruling if the record shows any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Tapia v. Collins Asset Grp., LLC*, No. 02-20-00129-CV, 2022 WL 325392, at \*2 (Tex. App.—Fort Worth Feb. 3, 2022, no pet.) (mem. op.). We cannot conclude that a trial court

10

abused its discretion merely because we would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

With regard to a trial court's sustaining an objection to summary-judgment evidence, that too is reviewed for an abuse of discretion. *Woods v. Soules*, No. 02-17-00336-CV, 2018 WL 2248488, at *2 (Tex. App.—Fort Worth May 17, 2018, pet. denied) (mem. op.). "A successful challenge to the trial court's evidentiary rulings generally requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded." *Id.* A trial court's ruling on a motion to reopen discovery is also reviewed for abuse of discretion. *See Parrish v. E. Tex. Med. Ctr. Athens*, No. 12-07-00084-CV, 2008 WL 2440227, at *1–2 (Tex. App.—Tyler June 18, 2008, no pet.) (mem. op.) (affirming denial of motion to reopen discovery); *Joshua v. Sanders*, No. 13-04-443-CV, 2007 WL 925634, at *8 (Tex. App.—Corpus Christi–Edinburg Mar. 29, 2007, no pet.) (mem. op.) (same).

> **Issue One: Excluding Cresson's post-discovery-deadline evidence and refusing to reopen discovery; sustaining other objections to Cresson's evidence.**

Cresson argues that because it established either good cause for its late-produced evidence or lack of unfair surprise or prejudice to the Beanes (or both), the trial court abused its discretion by excluding its summary-judgment evidence under Rule 193.6 or by refusing to reopen discovery. Cresson also challenges the trial court's sustaining other objections the Beanes lodged against Cresson's evidence. In light of

our deferential review and its limited scope, we are unable to conclude that the trial court abused its discretion with any of these rulings.

As the Beanes point out, much of what they requested from Cresson was "basic information supporting the [pleaded] claims, disclosure of potential witnesses and experts, and information and documents that would be needed to prove Cresson's claims." For example, the Beanes' interrogatories—which Cresson answered in October 2020 by simply saying, "To be supplemented"—sought such information as "a detailed description of each item that you contend belonged to Cresson Interest[ ], LLC, that was allegedly taken by Defendant's [sic]," as well as the condition of such items and "what you contend to be each item's value on the date you contend Defendants unlawfully deprived you of possession of such item." Cresson did not supplement its interrogatory answers before the February 23, 2021 hard deadline, nor did it supplement its Rule 194.2 disclosure responses to provide the Beanes with the amount of Cresson's claimed damages[13] or with the names, addresses, and telephone numbers of people with knowledge of relevant

---

[13]Cresson's response to the Rule 194.2(d) request was, "At present, Plaintiff's damages are the costs to repair and/or replace the furniture and[ ]fixtures removed and damaged by Defendants. Plaintiff also seeks recovery of the lost rents from the delay in occupancy of the next tenant, while the premises vacated by Defendant were restored." The declaration of Cresson's representative later submitted in response to the Beanes' summary-judgment motion was similarly vague on furniture- and fixture-damages amounts or replacement costs ("Cresson Interest was deprived of property valued at approximately $12,000-$15,000."). The declarant also asserted that Cresson lost two months' rent because BBQ on the Brazos could not immediately begin operating, but the monthly lease amount was not disclosed.

12

facts—such as those nonparties whose declarations Cresson submitted in responding to the Beanes' no-evidence motion.[14] Likewise, Cresson did not produce the requested documents we described in footnote 8, above.

Additionally, counsel's April 2021 declaration pointed to the need for additional discovery, which she "ha[d] already begun," including "continuing to gather records of expenditures related to replacing the items that Defendants wrongfully appropriated and repairing damages related to the Defendants' removal of those items" and "obtaining additional documents from" the former landlord and the current occupant, who "will be able to directly refute the Defendants' claims that the property at issue in this lawsuit was promised or given to them." But Cresson did not explain how COVID-19 prevented getting and producing such documents before February 23, 2021.[15]

---

[14]*See TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 898 (Tex. App.—Fort Worth 2007) (upholding exclusion of cell-phone-company employee at trial where defendant had disclosed "employees of Southwestern Bell Mobile Systems" but did not provide witness's name, address, or telephone number or her connection to case), *rev'd on other grounds*, 306 S.W.3d 230 (Tex. 2010). In its Rule 194.2(e) response, Cresson pointed to "the parties" and to an unnamed "convenience store manager" and "prior landlord" as knowing about the removal of and damage to fixtures and personal property. In its summary-judgment response, Cresson attached a declaration from a BBQ on the Brazos principal, the restaurant that occupied the leased space before and after the Beanes' tenure but whose identity had not been disclosed even by description. That declarant purported to assign monetary values to a commercial refrigerator ($3,000) and chairs ($800) that were missing when BBQ on the Brazos resumed its occupancy.

[15]And at least as to the first example, Cresson presumably had already made some such expenditures, and would have had records of them, before it sued the

13

**Good cause: the pandemic's effects**

The good-cause exception of Rule 193.6 allows the trial court to excuse failure to timely disclose or supplement in "difficult or impossible circumstances." *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 718 (Tex. App.—Dallas 2011, pet. denied) (holding no abuse of discretion where trial court denied new counsel's motion for leave to supplement deficient expert disclosures made by initial counsel). "The following factors, standing alone, do not constitute good cause: the inadvertence of counsel, lack of surprise, and the uniqueness of the excluded evidence." *Id.* (citing *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex. 1992) (op. on reh'g) (interpreting predecessor to Rule 193.6)); *see also O'Dell v. Wright*, 320 S.W.3d 505, 511–12 (Tex. App.—Fort Worth 2010, pet. denied), *abrogated on other grounds by Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143 (Tex. 2015).

Cresson relied solely on pandemic-related problems to explain its failure to timely supplement and fully respond to discovery before the deadline. Although COVID-19 unquestionably upended the normal course of events across every aspect of life, "the fact of the pandemic, standing alone, is not a reasonable explanation" for a missed deadline.[16] *Jones v. White*, No. 02-20-00198-CV, 2020 WL 5666564, at

---

Beanes in August 2020 or answered discovery in October—and certainly by its April 2021 amended motion to reopen discovery.

[16]The Texas Supreme Court's Thirty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, which was in effect when the trial court held the summary-judgment hearing, allowed—but did not require—courts to "modify or

14

*1 (Tex. App.—Fort Worth Sept. 24, 2020, no pet.) (mem. op.) (dealing with untimely notice of appeal). Of course, Cresson's counsel explained the effects that COVID-19 had had on her personally and on her legal practice, and we are certainly not without sympathy—and if we were the trial court, we could well have ruled differently.

But our task is to determine whether the trial court abused its discretion by acting arbitrarily or unreasonably. In carrying out that task, we must consider the facts before the trial court: Cresson made timely but deficient discovery responses before counsel caught COVID-19; Cresson was able to produce 42 pages of documents in December 2020 despite counsel's lingering COVID-19 effects; counsel experienced "flu-like symptoms and exhaustion" for about two weeks after her November 8, 2020 diagnosis and fully recovered "after the New Year," when presumably at least three-plus weeks remained until the February 23, 2021 discovery cutoff (assuming full recovery by January 31); and counsel did not seek any extensions during the discovery period, instead asking to reopen discovery or remove the case from the expedited process only after the Beanes moved for no-evidence summary judgment on February 26. *Cf. Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274 (Tex. App.—Austin 2002, pet. denied) (rejecting expert designation made after end of discovery period and noting

suspend any and all deadlines and procedures." *See* Supreme Court of Texas, *Thirty-Sixth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 21-9026, 629 S.W.3d 897, 897 (Tex. 2021).

15

that "the impetus for Ersek's disclosure of his expert witness was the [defendant's] motion for summary judgment").

The record is similarly noteworthy for what it does not reveal: how the pandemic prevented Cresson from fully answering the Beanes' written discovery when it responded in October 2020 or from supplementing its responses before counsel's long-time assistant departed and counsel herself fell ill; why counsel could not supplement Cresson's discovery responses because of COVID-19 at any point up to February 23;[17] or what it was about COVID-19's effects that prevented Cresson from moving to continue the discovery period before it expired.

This case finds some parallels with *Lopez v. Montemayor*, a healthcare-liability case in which the trial court denied the plaintiffs' request for a 30-day grace period to amend expert reports that had been timely served several months before the 180-day statutory period ended on April 2, 2002, but were later held deficient. 131 S.W.3d 54, 56–57 (Tex. App.—San Antonio 2003, no pet.). The plaintiffs' first attorney had been seriously ill "from April of 2002," which the appellate court "[l]iberally constru[ed]" as meaning that counsel did not have health problems until April 1, the day before the expert-report deadline. *Id.* at 62–63. Concluding that the trial court had not abused its discretion, the court noted that "[n]othing about [new counsel's] testimony suggests

---

[17]Counsel's declaration stated broadly that the combination of all pandemic-related events caused the loss of "dozens of productive working days" that, "in turn, had the effect of stalling discovery in this case."

[original counsel] was ill or unable to adequately function as the Lopez family's attorney for any duration of time during the 178-day period following the filing of their original petition." *Id.* at 63. As a result, the court "[could not] say the trial court abused its discretion by concluding the Lopezes' failure to file adequate expert reports was the result of intentional or consciously indifferent conduct," even though the court itself "may have reached a different conclusion under the facts presented." *Id.*

Here, Cresson provided timely but incomplete discovery responses, and its counsel was ill for a time during the 180-day Level 1 discovery period and had difficulty getting office help. But by counsel's own testimony, the discovery process was simply stalled for some "dozens" of days, and she had fully recovered "after the New Year." Without something to explain why Cresson could not have moved for a discovery extension or supplemented and fully answered the Beanes' discovery requests before February 23, 2021, we cannot say that the trial court abused its discretion by not finding good cause for Cresson's tardy evidence even though, again, we may have decided differently.[18]

---

[18]We view Cresson's COVID-19-related cases as inapplicable to our Rule 193.6 good-cause analysis. *Ex parte Delacerda* did not involve Rule 193.6 but granted an extension to file a habeas writ because the pandemic had shut down public offices, making it difficult to obtain necessary records, and because stay-at-home orders made it difficult for counsel to conduct interviews and gather facts. No. WR-88,283-01, 2020 WL 3635870, at *1 (Tex. Crim. App. June 29, 2020). In *In re Peterson*, a mandamus proceeding, the court rejected real-party-in-interest's laches argument, holding only that a three-month delay in relator's filing the petition was not unreasonable in light of the intervening pandemic. No. 03-20-00504-CV, 2021 WL 279245, at *3 (Tex. App.—Austin Jan. 28, 2021, orig. proceeding) (mem.

And because good cause is also the touchstone for obtaining an order modifying discovery procedures and deadlines, we are likewise unable to find an abuse of discretion in the trial court's declining to reopen discovery. *See* Tex. R. Civ. P. 191.1 (providing that procedures and limitations in discovery rules "may be modified . . . by court order for good cause").

**Lack of unfair surprise or prejudice**

As with good cause, it was Cresson's burden under Rule 193.6 to establish that the Beanes were neither unfairly surprised nor unfairly prejudiced by Cresson's late-produced evidence. *See* Tex. R. Civ. P. 193.6(b) ("Burden of establishing exception."),

---

op.). And in *Kim v. Ramos*, although plaintiff's counsel had contracted COVID-19 and missed three weeks of work, the appellate court held that the trial court's having granted three extensions to file an expert report in that healthcare-liability action did not require the plaintiff's counsel to prove that COVID-19's effects necessitated the second and third extensions as well as the first; rather, the trial court had broad authority under the Texas Supreme Court's emergency orders to modify any statutory deadline without needing proof that COVID-19 impacted a party's ability to meet the expert-report deadline. 632 S.W.3d 258, 270–71 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (and distinguishing Hurricanes Harvey and Rita emergency orders, which did require causal connection). Finally, although we agree with Cresson that "the Texas Supreme Court's overarching policy in approaching the unintentional errors of counsel is that cases should be decided on the merits rather than on a procedural default, when possible," *Tex. Dept. of Aging & Disability Servs. v. Mersch*, 418 S.W.3d 736, 742 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (involving e-filing mistakes that "should not become a trap for the unwary when no harm is done"), the purposes of and strict procedures involved in an expedited proceeding, coupled with Rule 193.6's automatic-exclusion feature, put this case on a different plane. Moreover, Cresson did not argue an unintentional error of counsel as good cause but instead pointed to *Mersch* as presenting a "related context." In any event, inadvertence or mistake is not in and of itself good cause to avoid automatic exclusion under Rule 193.6. *See PopCap Games*, 350 S.W.3d at 718; *O'Dell*, 320 S.W.3d at 511–12.

*see also Fort Brown Villas III*, 285 S.W.3d at 881 (discussing rule in context of post-deadline no-evidence summary judgment). Although Cresson argues that "the Beanes' failure to argue and support undue prejudice is sufficient to support a finding of no undue prejudice," that is not what the rule provides, and the case Cresson cites for that proposition did not involve Rule 193.6. *See Krajca v. Caum*, No. 01-16-00057-CV, 2017 WL 2471102 (Tex. App.—Houston [1st Dist.] June 8, 2017, pet. denied) (mem. op.). *Krajca* involved a timely filed but untimely served response to a no-evidence motion due to an e-filing typo in opposing counsel's email address, and the court stated that "when the party opposing a late filing makes no claim that it would be prejudiced, a finding of no undue prejudice is proper." *Id.* at *3.

But grounds for excusing a tardy summary-judgment response differ from Rule 193.6's framework and burdens, as caselaw demonstrates:

> [T]he nonmovant [for summary judgment] establishes good cause by showing that the failure to timely respond (1) was not intentional or the result of conscious indifference, but the *result of an accident or mistake*, and (2) that allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment.

*In re M.N.*, 262 S.W.3d 799, 804 (Tex. 2008) (emphasis added) (quoting *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002) (op. on reh'g)); *see Krajca*, 2017 WL 2471102, at *3 (citing *M.N.*). Rule 193.6 has different and particular policies underlying it, *see Kings Ridge*, 303 S.W.3d at 783, and does not import "accident or mistake" excuses, *see PopCap Games*, 350 S.W.3d at 718.

19

In a Rule 193.6 case that is more on point, the Dallas court affirmed the exclusion at trial of a category of damages evidence (diminution in value) not disclosed until plaintiff submitted her affidavit in response to a no-evidence motion filed after discovery ended. *Allan v. Nersesova*, 307 S.W.3d 564, 575–76 (Tex. App.—Dallas 2010, no pet.). One of Allan's appellate arguments was that "the record does not show appellees suffered surprise or prejudice because Allan was deposed by Koraev but was never asked about the claimed damages of diminished market value of the [condominium] unit" due to water incursions. *Id.* at 576. Rejecting this idea, and placing the burden where the rule requires, the court said, "The issue, however, is not whether the evidence shows appellees suffered surprise or unfair prejudice but whether the record establishes that they did *not* suffer surprise or unfair prejudice." *Id.* (emphasis added) (citing Tex. R. Civ. P. 193.6(b)). The court concluded that appellees' not asking about those damages in deposition did "not demonstrate that they would not have been surprised or unfairly prejudiced" by Allan's diminished-value testimony. *Id.*; *see also Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Tex., Inc.*, No. 02-12-00512-CV, 2014 WL 5307191, at *6 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied) (mem. op.) (holding that lost-profits evidence should have been excluded at trial under Rule 193.6; although plaintiff–appellee contended that defendants–appellants could have derived damages model by putting together two separate answers within plaintiff's deposition, "[i]t was not the appellants' burden, but

20

METT's. . . . METT did not show why its failure to provide the calculation was not unfair surprise or prejudice to the appellants.").

Cresson points to the Beanes' ostensible judicial admission that they possess the fixtures and personal property Cresson has sued over, arguing that "[t]he Beanes cannot be surprised by documents relating to the property the Beanes admittedly possess and refuse to return." But neither Cresson's petition nor its Rule 194.2 disclosures itemized what it claimed the Beanes had taken, and the Beanes' amended answer said only (in connection with their affirmative defenses) that

> Defendant's [sic] became the owner of all of the personal property, the subject of Plaintiff's claim, at the time of entering into the lease agreement with Eagles on Ervay, Ltd., when the Lessor transferred such property to them as "boot" to induce them to enter into the original lease. This representation and promise that they could have all restaurant equipment was made for the purpose of inducing the Defendants to enter into the lease and relied upon them by doing so.

It seems self-evident that the Beanes' contention that the previous owner had given them the property as an inducement does not necessarily mean that the Beanes and Cresson had the same removed items in mind, and Cresson did not accuse the Beanes of taking *everything* from the restaurant space. In responding to the no-evidence motion, Cresson defined "Disputed Property" as "fixtures and other personal property that was owned by Cresson Interest as successor to Ervay, and that had been at the location since before Rooster's BBQ had begun occupancy"—but even then, the declaration of Cresson's representative got no more specific than saying that "[t]he Disputed Property includes" seven particular items.

21

More basically, even if Cresson is correct that the Beanes could not have been surprised because they knew what they had taken, the Beanes were unquestionably entitled to know how much Cresson claimed as damages—including being entitled to documents showing replacement or repair costs—and the identity of people with knowledge of facts, neither of which Cresson had disclosed. The Beanes would have had a clear interest, for example, in knowing what value Cresson placed on a commercial refrigerator so that they might develop evidence within the discovery period supporting a lower amount.

Cresson did not carry its burden to show that the Beanes were not unfairly surprised or prejudiced by Cresson's late-provided evidence, and the trial court did not abuse its discretion by sustaining the Beanes' Rule 193.6(a) objections.

### Exclusion of evidence on other than Rule 193.6 grounds

The vast majority of Cresson's summary-judgment evidence was excluded when the trial court granted all the Beanes' Rule 193.6 objections: the deed to Cresson of the real property; the Improved Property Sale and Purchase Agreement by which Cresson claimed, by assignment, to have acquired all leases and all personal property; the assignment of that purchase agreement to Cresson; statements in Cresson's representative's declaration that (1) the Beanes removed more than $10,000 in fixtures and personal property that Cresson owned, (2) Cresson had taken an assignment of all existing personal property and fixtures, including seven specific items, (3) the Beanes took components of a fire-suppression system, costing Cresson $3,000+ in repairs,

22

(4) the items that the Beanes removed were worth $12,000–$15,000, and (5) as a result of the Beanes' actions, BBQ on the Brazos could not immediately begin operating, costing Cresson two months' rent; and statements in BBQ on the Brazos's declaration purporting to assign values to a commercial refrigerator and some chairs. With the Rule 193.6 objections granted, Cresson was left with no evidence of its acquisition of any specific personal property or fixtures from the previous owner, no evidence of exactly what items the Beanes were alleged to have taken or damaged, no evidence of lost rent, and no evidence of its damages.

But the trial court also sustained other objections about which Cresson complains. In addition to the evidence that was excluded on sole or alternative Rule 193.6 grounds, we are left with the following objected-to exhibit and statements, to which we append our observations:

- A July 3, 2020 letter from Cresson's counsel to the Beanes' counsel demanding the return of ten specific items the Beanes allegedly wrongly removed, stating that the Beanes were wrong in telling the convenience-store manager that they "owned" the property, stating that the missing property had been on-site and used by BBQ on the Brazos before the Beanes took over, and stating that the former landlord had confirmed that he did not sell the ten listed items to the Beanes. (Hearsay objection, if offered for the truth of the factual matters)

  o Although Cresson denies that it offered this letter for the truth of the matters asserted, the fact that a demand letter was sent is not at issue, so we do not see why it would have been offered for any other purpose.

- Cresson's representative's statement that "[t]he sale included all personal property and fixtures on and in the Property." (Best-evidence, conclusory, and parole-evidence objections)

23

- o The excluded sales contract would have been the best evidence of what it encompassed.

- Cresson's representative's statement that "the Beanes agreed to surrender the Disputed Property upon termination of the lease." (Best-evidence, conclusory, and parole-evidence objections)

  - o The declaration did not point to a lease provision so stating, and even if true, Cresson had no admissible evidence of what the Beanes took or its value.

- Cresson's representative's statement that "the Beanes had been in possession of the Disputed Property in trust for one specific purpose—for the Beanes to use in their operation of the restaurant in the leased restaurant space." (Conclusory, unsupported-opinion objections)

  - o Even assuming this statement was admissible, Cresson still had no evidence of what the Beanes took or its value.

- Ervay's representative's statement about "Ervay's sale . . . which included the following personal property: [a ladder, vent-a-hood, sinks, and working fire-suppression system]." (Best-evidence, conclusory, and parole-evidence objections)

  - o The excluded sales contract would have been the best evidence of what it encompassed; Cresson was still left with no admissible evidence of what the Beanes took, or its value.

The trial court had broad discretion in deciding whether to admit or exclude Cresson's summary-judgment evidence, and "[a] successful challenge to the trial court's evidentiary rulings generally requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded." *Woods*, 2018 WL 2248488, at *2. We cannot say here that that is the case when it comes to evidence that was excluded on other than Rule 193.6 grounds.

We overrule Cresson's first issue.

24

**Issue Two: Granting no-evidence summary judgment in favor of the Beanes.**

In Cresson's second issue, it contends that the trial court erred in granting summary judgment on all four of Cresson's causes of action. A no-evidence summary judgment is proper if the movant demonstrates that no evidence exists to support an essential element of a claim. *See* Tex. R. Civ. P. 166a(i). The movant must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

Here, an essential element of each of Cresson's claims—breach of contract, theft liability, breach of bailment, and tortious interference with a contract—is the existence of actual damages. The Beanes pinpointed that element as well as all others in their motion. Because Cresson did not disclose an amount or produce any evidence of its damages before the discovery deadline, and because the trial court did not abuse its discretion in excluding Cresson's post-deadline evidence, a no-evidence summary judgment was appropriate on that basis alone. Moreover, Cresson does not point to any nonexcluded evidence as raising a fact issue on any of its claims, thus tacitly conceding that if we uphold the trial court's Rule 193.6 ruling, summary judgment was appropriate.

We overrule Cresson's second issue.

25

**Issue Three: Allowing the Beanes to produce evidence of their attorney's fees after the discovery deadline, and overruling Cresson's objections and no-evidence summary-judgment motion filed on that basis.**

Finally, Cresson argues that the trial court should have held the Beanes to the same hard discovery deadline and thus should have granted Cresson's no-evidence motion and should not have considered the Beanes' objected-to attorney's-fees evidence attached to their second summary-judgment motion on their fee counterclaim.[19] We are not persuaded by Cresson's "goose–gander" argument for excluding the Beanes' evidence: the Beanes' Rule 194.2(f) expert disclosure was

---

[19]This issue comes to us in a slightly unusual procedural posture. At the September 2021 hearing on the parties' competing motions, the Beanes' counsel "volunteer[ed] to submit to a deposition on attorney's fees between now and the trial date on November 1st." The trial court stated on the record that "as of right now" it was denying both Cresson's no-evidence motion and the Beanes' traditional motion and was additionally ordering that the Beanes' counsel sit for a deposition. It then entered an order to that effect, giving Cresson 30 days to depose opposing counsel and confirming the November 1 trial setting. To shortcut matters and get to a final judgment, the parties entered into a Rule 11 agreement some two weeks later without conducting a deposition. In the Rule 11, the parties agreed to jointly request a final judgment denying Cresson's no-evidence motion, overruling Cresson's objections to the Beanes' evidence, and granting the Beanes' second summary-judgment motion; they also stipulated to the reasonableness of the Beanes' attorney's fees ($12,000 in the trial court and conditional appellate fees, beginning with $12,000 in this court if Cresson's appeal is unsuccessful). Other than the reasonableness and necessity of attorney's fees, Cresson reserved the right to raise "any arguments or appellate contentions of any kind relating to any matter." "The intent of this Rule 11 is to preserve all of Plaintiff's arguments concerning all rulings of the trial court other than that the amount of fees requested by Defendants and set forth above is reasonable and necessary." The Beanes now claim that Cresson's third issue should be overruled under the invited-error doctrine. We disagree and will address the substance of the issue.

sufficient, and the Beanes were not required to produce attorney's-fees evidence, their fee agreement, or counsel's billing statements until the fee issue—which is retrospective and depends on the course of litigation for the fees' necessity and reasonableness—was ripe for the trial court's determination.

Cresson argues that Rule 194.2(f) *disclosure* requirements for attorney's-fees experts call for producing attorney's-fees *evidence* before the discovery cutoff,[20] relying on *Rohrmoos Venture v. UTSW DVA Healthcare*, 578 S.W.3d 469 (Tex. 2019). But *Rohrmoos* involved what's needed to prove up fees, not the sufficiency of disclosures. *See id.* at 498. The same was true in Cresson's other case, *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354–55 (Tex. 2020) (addressing proof of contingent appellate attorney's fees). Extending *Rohrmoos* and *Yowell* to expert disclosures would impose a new standard that far exceeds what the rule requires and is impractical in any event. When an attorney's-fees expert is disclosed, the costs of litigating through trial have not yet been incurred and depend on many variables such as the aggressiveness of discovery and the number and complexity of any dispositive motions. Until the case is at or after the trial stage, opining on the reasonableness and necessity of particular fees is impossible; ditto for appellate fees.

*Rohrmoos* did not undercut our earlier analysis of a fee-expert disclosure in *Kim v. Sanchez*, No. 02-12-00465-CV, 2014 WL 4364170 (Tex. App.—Fort Worth Sept. 4,

---

[20]Cresson did not propound any discovery to the Beanes other than its Rule 194 request.

27

2014, pet. denied) (mem. op.). In *Kim*, the appellant complained of an allegedly deficient attorney's-fees expert disclosure, arguing that "[n]o information was provided concerning the amount of attorney's fees sought; the method of calculation of fees by hourly rate or contingency; or the number of anticipated hours expended in preparation for trial. Additionally, no documents were produced such as billing records or fee agreement as also required." *Id.* at *4. The disclosure itself had stated that the attorney was "expected to testify regarding the reasonable and necessary attorney fees that were necessary in prosecuting this case and in rebuttal to any attorney fee testimony offered by an expert on behalf of Defendant." *Id.* We held the disclosure sufficient "to give the 'general substance' of that expert's anticipated testimony, especially when, as here, the responding party is seeking fees for representation during the entire litigation, which are not determinable at the time of disclosure." *Id.*; *see also Frazer Transp., Inc. v. Transafe, Inc.*, No. 01-16-00824-CV, 2017 WL 3081243, at *3 (Tex. App.—Houston [1st Dist.] July 20, 2017, no pet.) (mem. op.) (holding that disclosure, made more than a year before trial, that attorney would testify "that the legal fees and costs Plaintiff incurred in this matter were reasonable and necessary" was "all that is required, substantively, of an expert designation on attorney's fees"); *Goldman v. Olmstead*, 414 S.W.3d 346, 364–65 (Tex. App.—Dallas 2013, pet. denied) (same).[21]

---

[21]In fact, courts have held that even a complete failure to timely disclose a fee expert under Rule 194.2(f) can be excused where the party had requested attorney's

28

As for Cresson's argument that the Beanes failed to disclose the documents "provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony," *see* Tex. R. Civ. P. 194.2(f)(4)(A), the Beanes' counsel attached his fee agreement, billing records, and affidavits from Rooster Beane and counsel to the Beanes' second summary-judgment motion seeking attorney's fees. At the hearing, the Beanes' counsel, in discussing his disclosure response, stated,

> At that point in time, 30 days after suit, there had been very little attorney's fees incurred, and certainly I had not developed a document which would not be developed until we were coming closer to trial as to what the attorney's fees were or what attorney's fees were actually incurred. I believe the rule -- the discovery rule says that you should provide documents when they have been prepared or reviewed by the expert in anticipation of trial or anticipation of the expert's testimony. That did not occur until August of this year. I had time and billing sheets that I had used for billing my clients but not for the purpose -- but had not reviewed them to -- to arrive at an opinion as to attorney's fees through trial until basically that testimony was needed in August of this year.

We are aware of nothing that requires a party to produce billing records on a rolling basis under Rule 194.2(f),[22] or even to disclose a fee agreement under that rule. *See Carpenter v. Carpenter*, No. 02-10-00243-CV, 2011 WL 5118802, at *8 (Tex. App.— Fort Worth Oct. 27, 2011, pet. denied) (mem. op.) (noting that without specific

_____

fees in its original petition and the trial court ordered that the expert make himself available for deposition. *E.g.*, *Syrian Am. Oil Corp.*, 524 S.W.3d at 366–67.

[22]Doing so could well be meaningless anyway, if by the time of trial counsel had come to an opinion about reasonable and necessary fees that did not match what had been billed.

29

request for production, fee agreement not required to be disclosed because not a document "provided to, reviewed by, or prepared in anticipation of the expert's testimony"). And as we noted, *Rohrmoos* did not affect or discuss Rule 194.2(f) disclosures.

We overrule Cresson's third issue.

## Conclusion

Having overruled Cresson's issues, we affirm the trial court's judgment.


/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: August 31, 2022